# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CA-01926-SCT

*THE ESTATE OF JOHN GRIMES, BY AND
THROUGH HIS WIFE AND NEXT FRIEND,
HELEN GRIMES, ON BEHALF OF THE
WRONGFUL DEATH BENEFICIARIES*

*v.*

*DR. JAMES WARRINGTON, JR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/09/2006 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GEORGE F. HOLLOWELL, JR. |
| ATTORNEYS FOR APPELLEE: | LONNIE D. BAILEY |
| | TOMMIE G. WILLIAMS |
| | CHRISTOPHER WAYNE WINTER |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND REMANDED - 02/21/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND RANDOLPH, JJ.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.    This case comes to this Court on appeal from the Circuit Court of Bolivar County by Plaintiff Helen Grimes.  Grimes filed a wrongful-death action against Dr. James Warrington, Jr., alleging his medical malpractice resulted in the death of her husband, John Grimes.  After more than five years of litigation, the trial court granted Dr. Warrington summary judgment on the theory that he was entitled to immunity from suit pursuant to the Mississippi Tort Claims Act (MTCA).  From this ruling, Plaintiff appeals.  We hold that while the trial judge

was correct that Dr. Warrington is entitled to immunity, summary judgment was improper, as Dr. Warrington's unreasonable delay waived this affirmative defense. We therefore reverse the judgment of the trial court and remand for trial.

## FACTS AND PROCEDURAL HISTORY

¶2.   John Grimes, accompanied by his wife Helen, sought medical treatment at the Cleveland Medical Alliance (CMA) clinic on August 7, 2000, complaining of pain in his right side and abdomen.  Dr. James Warrington, Jr. examined Grimes and concluded that the pain he was experiencing was associated with a fall that occurred on August 4.  Dr. Warrington prescribed medication for inflammation and pain.

¶3.   The next day, after Grimes's condition did not improve, Helen took him to the emergency room at the Bolivar Medical Center, where Dr. John W. Lewis examined and admitted him.  Grimes underwent surgery on August 10, after being diagnosed with a perforated gallbladder, cholelithiasis, cholecystitis, and choledocholithiasis.  He was then placed in the intensive care unit.  On August 13, Grimes died while still at Bolivar Medical Center.

¶4.   On June 4, 2001, Helen Grimes brought suit against Dr. Warrington in the Circuit Court of Bolivar County on behalf of the Estate of John Grimes and all wrongful-death beneficiaries, alleging that Dr. Warrington's negligent failure to test and properly diagnose Grimes on August 7 later caused his death.  Dr. Warrington answered the Complaint on June 27, 2001, and asserted in his seventh affirmative defense that as an employee of CMA, a "subsidiary" of Greenwood-Leflore Hospital (GLH), he was entitled to tort immunity pursuant to the MTCA.

2

¶5.     For the next five years, the parties propounded and answered discovery, conducted a number of depositions, designated experts, and Dr. Warrington filed a motion in limine in preparation for the third and final trial setting of October 16, 2006.  On August 3, 2006, Dr. Warrington moved for summary judgment solely on the ground that he was entitled to immunity as an employee of an entity covered by the MTCA.  Mrs. Grimes responded to the motion on August 17, 2006, and argued that the MTCA did not cover CMA and its physician employee Dr. Warrington, and alternatively that this defense was waived by Dr. Warrington's failure to pursue it over the past five years.

¶6.     The parties conducted a hearing on the motion on August 21, 2006.  On October 5, 2006, this Court handed down its opinion in *Bolivar Leflore Medical Alliance, LLP v. Williams*, 938 So. 2d 1222 (Miss. 2006).  Relying on this opinion, the trial court granted summary judgment to Dr. Warrington on October 12, 2006.  Mrs. Grimes filed a Notice of Appeal on November 6, 2006.

¶7.     The following issues were raised on appeal:

    **I.**    **Whether CMA is entitled to the protections, limitations and immunities of the MTCA.**

    **II.**    **Whether Dr. Warrington waived the MTCA affirmative defense due to unreasonable delay.**

## DISCUSSION

¶8. It is well-settled that this Court applies a de novo standard of review to the grant or denial of summary judgment by a trial court. *Jones v. Fluor Daniel Servs. Corp.*, 959 So. 2d 1044, 1046 (Miss. 2007); *Leffler v. Sharp*, 891 So. 2d 152, 156 (Miss. 2004). Considered in the light most favorable to the nonmoving party, if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Miss. R. Civ. P. 56(c); *Fluor Daniel*, 959 So. 2d at 1046; *Russell v. Orr*, 700 So. 2d 619, 622 (Miss. 1997).

### I. Whether CMA is entitled to the protections, limitations and immunities of the MTCA.

¶9. The Mississippi Tort Claims Act (MTCA), codified at Mississippi Code Annotated Section 11-46-1 *et seq.*, provides that "political subdivisions . . .[including any] community hospital as defined in 41-13-10 . . . or other instrumentality thereof" are covered by the Act. Furthermore, employees of these political subdivisions are covered by the Act when acting within the course and scope of their employment.[1] *See* Miss. Code Ann. § 11-46-5 (Rev. 2002).

¶10. The parties do not dispute that GLH is a "community hospital" within the definition of "political subdivision" pursuant to Section 11-46-1(i). Further, the parties do not dispute that Dr. Warrington is an "employee" of CMA. The issue before this court is whether CMA

---

[1] If, however, an employee's conduct constituted fraud, malice, libel, slander, defamation, or any criminal offense other than a traffic violation, such conduct will not be considered as action in the course and scope of employment. *See* Miss. Code Ann. § 11-46-5(2) (Rev. 2002).

4

is entitled to the protections, limitations and immunities of the MTCA as an "instrumentality" of GLH. If CMA is such an instrumentality, then the procedural and substantive provisions of MTCA would apply, ultimately barring suit against Dr. Warrington in his personal capacity. To be in compliance with the MTCA, Grimes would have had to sue CMA, joining Dr. Warrington under Section 11-46-7(2) in his representative capacity only, and to have provided the requisite ninety-day notice pursuant to Section 11-46-11(1). Because Grimes did not pursue her claims in this manner, her lawsuit would have to be dismissed, with any refiling barred by the statute of limitations.

¶11.    As previously mentioned, this Court recently decided a case which is nearly identical to the facts at bar. In ***Bolivar Leflore Medical Alliance, LLP v. Williams***, 938 So. 2d 1222 (Miss. 2006) (hereinafter "***BLMA***"), this Court examined a partnership agreement between GLH (the same community hospital at issue here) and the Bolivar Leflore Medical Alliance (BLMA). This Court reviewed the applicability of the MTCA to BLMA to determine if the Act's venue provisions were triggered. ***Id.*** at 1224-1225. In ***BLMA***, the plaintiffs sued a physician-partner for medical malpractice causing the wrongful death of their child. ***Id.*** at 1223. In determining BLMA was an instrumentality of GLH entitled to tort immunity, this Court reviewed the partnership agreement between GLH and the physician-partners of BLMA. ***Id.*** We noted that GLH maintained a ninety-eight percent interest in the partnership, that the division of net income and losses mirrored the percentage of interest, and that the business affairs of BLMA were controlled by an executive committee comprised of two representatives from GLH and one physician-partner. ***Id.*** Because GLH maintained control of BLMA, this Court found that BLMA was "an 'instrumentality' of GLH,' and

5

accordingly entitled to the protections, limitations, and immunities of the MTCA." *Id.* at 1232.

¶12.   Like BLMA, CMA is a partnership comprised of physician-partners and GLH.  In August 2000, when Grimes sought treatment, CMA was comprised of four physician-partners, each holding a one percent ownership interest and GLH holding the remaining ninety-six percent. The partnership agreement between GLH and the physician partners of CMA  is nearly identical to the partnership agreement at issue in *BLMA*.  Grimes asserts that there are differences between the two agreements which represent the CMA physicians' desire to control their practice more than those in BLMA, and therefore application of the *BLMA* analysis is foreclosed.

¶13.   First, Grimes contends that the partnerships (and their agreements) are materially different because they were formed for different reasons.  Grimes points to an argument made by the *BLMA* defendants that the BLMA partnership was "created to assist GLH in performing its legitimate purpose of providing health care services to the public." *Id.* at 1231.  Grimes then points to the partnership agreement for CMA, which says CMA's purpose and scope is  "to engage in any type of business in any jurisdiction a general partnership could engage in."  Notwithstanding this proffered difference, the "purpose and scope" to which Grimes refers comes from section 1.05 of the CMA agreement regarding the purpose of the partnership.  That section is identical to section 1.05 of the BLMA agreement stating the same purpose.  The logical comparison is between CMA's purpose section (1.05) and any purpose section in the BLMA agreement, and not between CMA's section 1.05 and a statement made by a party in another action.  There is no difference between the stated

6

purpose of the of the CMA partnership and the stated purpose of the partnership agreement at issue in **BLMA**.

¶14.    Grimes next points to a number of differences in the language of the partnership agreements, the end result of which, she argues, illustrates that the physicians maintained control of the partnership in a way that forecloses application of **BLMA**. First, Grimes argues that CMA's executive committee, although made up of two GLH representatives and one physician-partner just like that of BLMA, is different because unanimous consent of the committee is required for certain transactions of the partnership, whereas in the BLMA agreement, a two-thirds majority vote was needed. Grimes concludes that GLH could control certain decisions of BLMA because it had majority membership of the board, while here it cannot do so without the consent of the physician-partner. While this is indeed a difference, Grimes does not persuade this Court that GLH has, in reality, any less control over CMA than it did over BLMA.

¶15.    In 2005, the Mississippi Court of Appeals was faced with a similar quandary in **Allstadt v. Baptist Memorial Hospital**, 893 So. 2d 1083, when it considered whether or not a contract (which, on its face, granted control to a third party) divested the hospital of its status as a "community hospital" and therefore of its MTCA protection. The contract granted the third party the "authority and responsibility to conduct, supervise, and manage the day-to-day operations of the hospital . . . ." **Id.** at 1084. The Court of Appeals stated, "[d]espite the language in the contract, Tippah County retained **ultimate control** over the operation of the hospital and management decisions" and therefore retained its status as a "community hospital and its MTCA protection." **Id.** at 1086 (emphasis added).

7

¶16. Just as in ***BLMA*** and ***Allstadt***, ultimate control in the present case remained in the hands of the community hospital. First, GLH maintained majority membership of the executive committee. CMA could not take any action nor make any decision without the approval of GLH. Second, GLH maintained the vast majority interest of CMA, ninety-six percent at the time Grimes sought treatment. "[L]egislative intent and purpose of liberal construal are best supported by" granting MTCA protection. ***BLMA***, 938 So. 2d at 1232.

¶17. Grimes also argues that ***BLMA*** is not controlling because the physicians at CMA were permitted to engage in other work more than seventy-five miles outside of Cleveland, Mississippi, while the physicians at BLMA were restricted from such activity. To the contrary, the physicians at BLMA enjoyed the same freedom, the BLMA physician employment agreement including virtually the same statement regarding employment outside a seventy-five mile radius.

¶18. Next, Grimes asserts that ***BLMA*** is not controlling because Dr. Warrington testified that he was not aware that he had any admitting privileges at GLH and that he was not on staff at GLH. Notwithstanding what Dr. Warrington knew or did not know, the BLMA and CMA physician employment agreements contained identical "general qualifications" provisions which stated: "Employee shall maintain privileges and membership on the active medical staff of Bolivar County Hospital and will make application for privileges and maintain membership on the courtesy staff of Greenwood-Leflore Hospital. . . ."

¶19. Grimes then suggests that ***BLMA*** is not applicable because the CMA physicians shared ninety percent of the profits of the clinic, and GLH received ten percent, but only after the physicians collected more than fifty percent of what was collected from the patients.

8

While this appears to be an argument stating that the profit-loss arrangements are different in the two cases, both the CMA and BLMA partnership agreements provided that physicians would be compensated according to a certain percentage of their collections, and that as partners, each would share in the profits and losses of the clinic.

¶20.    In sum, the rationale this Court used in finding BLMA to be a political subdivision of GLH applies to the case at bar.  Grimes's attempts to distinguish the partnership agreements are unpersuasive.  While it is true that some decisions of the CMA partnership required unanimous consent of the executive committee, this did not strip GLH of its ultimate control over the instrumentality.  Therefore, this Court conclusively finds that CMA is an "instrumentality" of GLH.  As an "instrumentality," CMA is entitled to the protections, limitations and immunities of the MTCA.  As an employee of CMA, Dr. Warrington is therefore entitled to the protections of the MTCA.

## II.    Whether Dr. Warrington waived the MTCA affirmative defense due to unreasonable delay.

¶21.    Grimes argues that, regardless of whether CMA is found to be an instrumentality of GLH entitling Dr. Warrington to the protections of the MTCA, Dr. Warrington waived this affirmative defense due to unreasonable delay.  Dr. Warrington argues that the delay was not unreasonable, and, alternatively, that waiver of tort immunity is a function of the Legislature and cannot be effected by the judiciary.

¶22.    In *East Mississippi State Hospital v. Adams*, 947 So. 2d 887 (Miss. 2007), defendants sought to dismiss an action for insufficient process and service of process. Defendants raised the defense properly and timely in their answer, but their failure to pursue the defense,

9

together with their active participation in litigation, served as a waiver. *Id.* "A defendant's failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver." *Id.* at 891 (quoting *Miss. Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 181 (Miss. 2006)).

¶23. In *Horton*, we held that the defendants' unreasonable delay (for eight months) waived their right to compel arbitration. *Id.* at 180-181. This Court advised that to pursue an affirmative defense meant to plead it, bring it to the court's attention, and request a hearing. *Id.* at 181.

¶24. This Court considers MTCA immunity as an affirmative defense. *See City of Ellisville v. Richardson*, 913 So. 2d 973, 975 (Miss. 2005); *Lumberman's Underwriting Alliance v. City of Rosedale*, 727 So. 2d 710, 712 (Miss. 1998); *Dixon v. Singing River Hosp. Sys.*, 632 So. 2d 951, 952 (Miss. 1991). Under this Court's holding in *Adams*, Dr. Warrington would be required to pursue the defense of tort immunity as he would any other affirmative defense or risk losing it.

¶25. In the case at bar, Grimes filed her Complaint on June 4, 2001. Dr. Warrington filed a timely Answer and did assert as his seventh affirmative defense that he was entitled to tort immunity by the MTCA. After answering the complaint, however, Dr. Warrington did nothing to argue or even assert immunity until August 3, 2006, when he moved for summary judgment solely on this defense.

¶26. Dr. Warrington offers no explanation as to why he did not move the lower court for summary judgment until August 2006. He offers no evidence that any information needed

10

to assert this affirmative defense was not available to him from the inception of the litigation. In the period from June 17, 2002, to his summary judgment motion on August 3, 2006, the case was set and twice reset for trial, experts were designated and deposed on the merits of the negligence claim, and Dr. Warrington filed a motion in limine to exclude part of Grimes's expert's testimony. All of this was an unnecessary and excessive waste of the time and resources of the parties and the court if Dr. Warrington had been immune from tort liability since the moment the Complaint was filed.

¶27. Just as in *Adams*, Dr. Warrington asserted his affirmative defense in his answer, but rather than filing a motion to dismiss on this ground, he proceeded substantially to engage the litigation process by consenting to a scheduling order, participating in written discovery, and conducting depositions. This Court finds that Dr. Warrington's failure actively and specifically to pursue his MTCA affirmative defense while participating in the litigation served as a waiver of the defense.

## CONCLUSION

¶28. This Court's holdings in *BLMA* and *Adams* govern here. Under *BLMA*, Dr. Warrington was entitled to the MTCA immunity as an employee of a community hospital's instrumentality. However, because he unreasonably delayed more than five years in pursuing this defense and actively participated in discovery on the merits, he has waived this defense under *Adams*. Accordingly, we reverse the trial court's grant of summary judgment and remand this case for trial on the merits.

¶29. **REVERSED AND REMANDED.**

11

**WALLER, P.J., EASLEY, CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR.  DIAZ, P.J., AND GRAVES, J., CONCUR IN RESULT ONLY.**