# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-02124-SCT

*CYNTHIA S. WOODALL, INDIVIDUALLY, AS
ADMINISTRATRIX OF THE ESTATE, AND ON
BEHALF OF ALL WRONGFUL DEATH
BENEFICIARIES, OF CLIFTON WOODALL,
DECEASED*

*v.*

*AAA AMBULANCE SERVICE, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/04/2013 |
| TRIAL JUDGE: | HON. MICHAEL M. TAYLOR |
| TRIAL COURT ATTORNEYS: | JAMES F. NOBLE, II |
| | MICHAEL J. TARLETON |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES F. NOBLE, III |
| ATTORNEY FOR APPELLEE: | MICHAEL J. TARLETON |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 04/23/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., PIERCE AND COLEMAN, JJ.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    In this wrongful-death suit, the circuit judge found that, because the defendant was

an instrumentality of governmental entities, the suit was controlled by the Mississippi Tort

Claims Act.  And because the plaintiff failed to file her complaint within the one-year statute

of limitations, the circuit judge granted the defendants summary judgment.  We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Cynthia Woodall filed this wrongful-death action in the Pike County Circuit Court against AAA Ambulance Service, Inc., and Phillip McKey, AAA emergency medical technician-paramedic.

¶3.     On July 3, 2010, Cynthia Woodall's husband suffered a cardiac arrest while working as a heating and cooling contractor at a home in McComb, Mississippi.  The homeowner promptly called 911 at 11:54 a.m., and the Pike County Civil Defense/Emergency Management Agency transferred that call to AAA at 11:55 a.m.  Woodall alleges that AAA then failed to respond and arrive in a timely manner, and that the ambulance crew, including McKey, failed to follow established protocol for cardiac-arrest response and made minimal attempts to provide Mr. Woodall proper care.

¶4.     On February 24, 2012, Woodall filed this wrongful-death action.  AAA and McKey responded with a combined answer and motion to dismiss for failure to timely file, arguing that they were protected governmental entities, and that the Mississippi Tort Claims Act provided the sole procedural avenue for Woodall's claim.  They further argued that Woodall had failed to file within the Act's one-year statute of limitations, and that Woodall had failed to provide the Act's required ninety-day pre-suit notice.

¶5.     The circuit judge denied the motion without prejudice, allowing the parties to conduct discovery about whether the defendants were entitled to Tort Claims Act protection.  The parties renewed their arguments in a motion for summary judgment and response.  Following

a hearing, the circuit judge determined that AAA and McKey were entitled to the Act's protections and dismissed Woodall's complaint. Woodall appealed.

## ANALYSIS

¶6.     This sole question for our review is whether AAA is entitled to Tort Claims Act protections. The parties agree that if AAA is an instrumentality of a governmental entity, McKey shares its protection, and this claim was untimely filed. The parties likewise agree if AAA is not an instrumentality of a governmental entity, this case was timely filed, and summary judgment was improper.

¶7.     On a motion for summary judgment, the movant is entitled to a judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] "In considering a motion for summary judgment, courts view the evidence in the light most favorable to the nonmoving party,"[2] but whether an entity is subject to Mississippi Tort Claims Act protection is a question of law reviewed de novo.[3]

¶8.     The Mississippi Tort Claims Act provides the exclusive civil remedy against any governmental entity or its employee,[4] and all claims brought under the Act are subject to a

---

[1] Miss. R. Civ. P. 56(c).

[2] *Anderson v. LaVere*, 136 So. 3d 404, 409 (Miss. 2014).

[3] *Bolivar Leflore Med. Alliance, LLP v. Williams*, 938 So. 2d 1222, 1226 (Miss. 2006) (quoting *Amiker v. Drugs For Less, Inc.*, 796 So. 2d 942, 945 (Miss. 2000)).

[4] Miss. Code Ann. § 11-46-7(1) (Rev. 2012).

one-year statute of limitations.[5]  The Act defines "governmental entity" as "the state and [its] political subdivisions."[6]  And, under the statute, a "political subdivision" includes

> any . . . body corporate other than the state responsible for governmental activities only in geographic areas smaller than that of the state, including, but not limited to, *any . . . instrumentality of the state*, whether or not the . . . instrumentality has the authority to levy taxes or to sue or be sued in its own name.[7]

AAA claims it is an instrumentality of governmental entities.

¶9.    An instrumentality is "something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out: a part, organ, or subsidiary branch esp. of a governing body."[8]  In past cases, we have found that independently incorporated entities can constitute instrumentalities of governmental entities subject to the Mississippi Tort Claims Act.

¶10.   In ***Bolivar Leflore Medical Alliance, LLP v. Williams***, we considered whether a family medical clinic created as a joint venture between a community hospital and several doctors constituted an instrumentality of that hospital subject to Tort Claims Act protection.[9] We discussed the fact that the hospital created and oversaw the medical practice; appointed two-thirds of the practice's executive committee, which controlled the practice's business

---

[5] Miss. Code Ann. § 11-46-11(3)(a) (Rev. 2012).

[6] Miss. Code Ann. § 11-46-1(g) (Supp. 2014).

[7] Miss. Code Ann. § 11-46-1(i) (Supp. 2014) (emphasis added).

[8] ***Williams***, 938 So. 2d at 1228 (quoting *Webster's Third New Int'l Dictionary* 1172 (3d ed. 1986)).

[9] ***Williams***, 938 So. 2d at 1223.

4

affairs; and owned a ninety-eight percent interest in the practice.[10]  We also considered that the practice was created to assist the hospital's mission of providing healthcare services to the public.[11]  These facts led us to the conclusion that the practice was an instrumentality[12] and, in so finding, we rejected the plaintiff's contention that the practice lost instrumentality status by delegating some powers from the hospital-controlled trustees to officers in the practice.[13]

¶11.    Likewise, in *Estate of Grimes v. Warrington*, we concluded that a similar medical practice was an instrumentality of another community hospital.[14]  Relying heavily on *Williams*, we noted that the community hospital held a ninety-six percent interest in the practice while the remaining interest was divided among individual doctors.[15]  We explained that this partnership agreement differed from that in *Williams* because its executive committee actions required a unanimous vote, effectively giving the individual doctors a veto.[16]  But we concluded that this fact cut both ways because that same veto power rested with the hospital, giving a governmental entity substantial control.[17]

---

[10] *Id.* at 1228.

[11] *Id.* at 1231.

[12] *Id.* at 1232.

[13] *Id.* at 1231-32.

[14] *Estate of Grimes v. Warrington*, 982 So. 2d 365, 370-71 (Miss. 2008).

[15] *Id.* at 368.

[16] *Id.*

[17] *Id.*

¶12.    Here, AAA supported its motion for summary judgment with exhibits showing that governmental entities entirely own AAA and exercise substantial control over its operations.[18]  In 1967, Harvel Smith informed the City of Hattiesburg and other interested entities that he intended to terminate his for-profit ambulance service, which had provided the only ambulance service in that area.  Recognizing the need for a replacement, the Hattiesburg Board of Mayor and Commissioners adopted a resolution to enter a joint venture with Forrest County, Forrest County General Hospital, and Methodist Hospital to own, operate, and maintain a nonprofit ambulance service.  That venture—AAA—had been incorporated by Forrest County General Hospital.

¶13.    AAA's original bylaws limit the corporation's membership to the City of Hattiesburg, Forrest County, Forrest County General Hospital, and Methodist Hospital.  They were later amended to remove Methodist Hospital.  The bylaws vest AAA's management and control in a board of directors.  The board has four directors appointed by Forrest County General Hospital, one appointed by Forrest County, and one appointed by the City of Hattiesburg.  Vacancies are filled by the member whose seat is vacant.

¶14.    The board elects and may remove AAA's officers.  The board may hire a general manager who runs AAA's operations.  The board sets the compensation for officers and the general manager, but the president or general manager sets the employees' compensation.  The president executes policies and programs that the board approves, and the board may confer other powers on the president and other officers beyond their traditional roles.

---

[18] AAA is owned by the City of Hattiesburg, Forrest County, and Forrest County General Hospital, a community hospital.

¶15. Each member receives monthly financial operating statements. The board must employ auditors to audit AAA's books, records, and operations yearly and provide the results to the members. Members may also demand additional audits at their own expense. The board determines where AAA will provide ambulance services, sets rates and charges, and promulgates regulations that govern AAA's operations. And AAA may be dissolved only by a unanimous member vote.

¶16. AAA's operations also are governed by AAA's General Management Services Agreement with Forrest County General Hospital. The Agreement appoints Forrest General Hospital "as the sole and exclusive entity acting for and on behalf of AAA as manager in the routine operations of Service." The Agreement recognizes that AAA maintains "ultimate control" over its "assets and affairs of Service." But it requires Forrest General to obtain, maintain, and renew all licenses and permits needed to operate AAA; to work with accreditation and governmental entities on AAA's behalf; to implement AAA's operational procedures and policies; and to prepare AAA's budgets. Forrest General provides AAA's administrator, chief financial officer, and director of operations. Forrest General makes all employment related decisions—hiring, firing, and promotions—regarding those positions and sets their compensation. Forrest General also has access to AAA's records. But the Agreement provides that nothing in it should be construed to make Forrest General or AAA an employee, partner, or joint venture in the other, and that Forrest General shall remain an independent contractor.

¶17. Under a second contract, AAA provides transportation from Forrest General's main hospital campus to its cancer center. Under that contract, AAA reports to Forrest General's Vice-President of Support Services, provides one ambulance for exclusive hospital use, and must comply with Forrest General's policies, procedures, and bylaws. That contract also contains a disclaimer that it should not be construed to make AAA an agent, servant, or employee of Forrest General or Forrest General an agent for AAA. Instead, the contract states that "AAA is intended to be, and shall be, an independent AAA and not an agent, servant or employee of Hospital."

¶18. We find it clear that governmental entities control AAA. The city, the county, and the hospital select the entire board of directors, and that board makes AAA's strategic decisions. Forrest County General Hospital controls AAA's day-to-day managers. So governmental entities entirely control both AAA's big-picture and day-to-day decisions.

¶19. Despite this governmental control, however, Woodall argues that AAA's instrumentality status is defeated by the language in each contract suggesting that AAA is an independent contractor providing services to Forrest County General Hospital.[19] Woodall contends that this case should be disposed of based on our opinions in *Poppenheimer v. Estate of Coyle* and *Flye v. Spotts*, which held that volunteer fire departments did not derive

---

[19] AAA was not providing services for Forrest County General Hospital when the acts in question occurred. Instead, AAA's operations include Pike County through a contract with Southwest Mississippi Regional Medical Center. But AAA does not claim instrumentality status through Southwest Mississippi Regional Medical Center.

8

instrumentality status from the counties they served as independent contractors.[20] Those cases "found 'that a private company and its employees who provide "governmental activities" via contract with a political subdivision are not immune from liability under the MTCA.'"[21] But we noted in *Flye* that the volunteer fire department never argued it was an instrumentality and found that the department's "operations are not controlled by the county."[22] Here, AAA's operations are overwhelmingly controlled by governmental entities, and those entities own AAA.

¶20. Alternatively, Woodall argues that our decision should be guided by a 1998 letter from AAA's counsel to the Mississippi Tort Claims Board asserting that AAA was neither a political subdivision nor a governmental entity as defined in the Tort Claims Act. Woodall contends that this letter creates a genuine issue of material fact as to AAA's instrumentality status, precluding summary judgement. We disagree.

¶21. When the circuit judge considered the letter, he noted that it possessed limited relevance because it predates our relevant caselaw. For that same reason, we find that the letter fails to create a genuine issue of material fact. At the time AAA's counsel wrote the letter, we had not provided the now-dispositive control analysis from *Williams* and *Grimes*. We fail to see how AAA's view of its own status pre-*Williams* and *Grimes* can create a genuine issue of material fact in the application of *Williams* and *Grimes*. And, in any case,

---

[20] *Poppenheimer v. Estate of Coyle*, 98 So. 3d 1059, 1065 (Miss. 2012); *Flye v. Spotts*, 94 So. 3d 240, 247-48 (Miss. 2012).

[21] *Poppenheimer*, 98 So. 3d at 1065 (quoting *Flye*, 94 So. 3d at 247-48).

[22] *Flye*, 94 So. 3d at 246.

as we have said above, an entity's claim to Mississippi Tort Claims Act protection is a question of law that we review de novo.[23] Stated another way, if we do not defer to a trial judge's opinion regarding this question, certainly we would not defer to the opinions expressed by AAA's counsel in a letter.

## CONCLUSION

¶22.    We agree with the circuit judge that AAA is an instrumentality of governmental entities, and that it is entitled to Tort Claims Act protection. And because Woodall did not file her complaint within the one-year statute of limitations, the circuit judge properly granted summary judgment, so we affirm.

¶23.    **AFFIRMED.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**

---

[23] *Williams*, 938 So. 2d at 1226 (quoting *Amiker* 796 So. 2d at 945).