GREENLEE, J.,
FOR THE COURT:
¶ 1. The University of Mississippi Medical Center (UMC) appeals an adverse judgment stemming from a wrongful-death action brought by Kim Hampton following the death of her son, Kimrick Smith. UMC argues that the trial court erred in denying its pretrial motion for summary judgment. Because Hampton filed her complaint outside of the one-year statute of limitations, and because UMC did not waive its statute-of-limitations defense, we reverse and render a judgment in favor of UMC.;
FACTS AND PROCEEDINGS BELOW
¶2. On October 30, 2010, Smith was stabbed in the torso in Marion County and airlifted to UMC for emergency medical care.. He was released on November 3, 2010. On November 8, 2010, Smith died after suddenly collapsing at home in Marion County. The parties agree that Smith’s death was caused by blood leaking from a heart wound sustained in the stabbing. The heart injury was not discovered during Smith’s treatment at UMC.
¶ 3. On November 11 or 12, 2010, Hampton spoke to the doctor who performed the autopsy, who informed her of the heart wound.[1] During this same time period, a lawyer informed Hampton that she could pursue a lawsuit against UMC. The parties agree that November 12, 2010, is the latest possible discovery date by the plaintiff of her cause of action and the start of the one-year statute of limitations.
¶4. UMC received pre-suit notice of Hampton’s wrongful-death claim on November 7, 2011, in accordance with the provisions of Mississippi Code Annotated section 11-46-11 (Rev. 2012). The parties agree that on November 7, 2011, five days remained of the original one-year limitations period. February 10, 2012, marked ninety-five days following UMC’s receipt of notice of the claim. On February 28, 2012, UMC denied Hampton’s claim.
¶5. Hampton filed a pro se complaint on May 29, 2012. The complaint did not allege how or when Hampton became aware of her possible claim against UMC, including the fact that she had a conversation with the doctor who performed the autopsy. UMC’s answer to the complaint pleaded generally as an affirmative defense that “[cjlaims against this defendant are barred by the applicable statute(s) of limitations.”
¶ 6. UMC propounded interrogatories on the same day it filed its answer. Hampton failed to respond and to attend a hearing on -UMC’s motion to compel. The court granted the motion to compel and Hampton submitted responses. Hampton then *1141 failed to appear at three noticed depositions. Following Hampton’s failure to appear at the third scheduled deposition on February 8, 2013, UMC filed a motion to dismiss due to the delay in litigation created by Hampton’s repeated failure to engage in the discovery process. UMC asserted that “[t]he plaintiffs blocking of initial basic discovery has prevented the defendant from evaluating certain affirmative defenses to determine if motions should be made.” Hampton was finally deposed on May 1, 2013. At that deposition, Hampton disclosed her November 10 or 11, 2010 conversation with the doctor who performed the autopsy on Smith. She also discussed that, around that same time, she had talked with an attorney friend, who informed her that she might have grounds for a suit against the hospital.
¶ 7. Following receipt of Hampton’s deposition transcript, UMC moved for summary judgment on May 28, 2013. It asserted that Hampton’s complaint—after accounting for the relevant Mississippi Tort Claims Act (MTCA) tolling periods— was filed fourteen days after the one-year limitations period and therefore barred. Hampton responded that UMC’s affirmative defense had been waived and that it lacked merit. A hearing was held on the motion for summary judgment on June 20, 2013.[2] The court took the motion under advisement, and denied the motion the morning of trial without specifying the grounds for denial.[3]
¶8. After a bench trial, in which the court heard the testimony of various expert -witnesses, the court entered a judgment in favor of Hampton on July 15,2014, in the amount of $500,000, finding that UMC breached its standard of care and that the breach proximately caused or contributed to Smith’s death.
¶ 9. UMC appeals, asserting that it did not waive its valid statute-of-limitations defense. In the alternative, UMC raises various challenges to the plaintiffs experts’ testimony. Because we resolve this case on the basis of UMC’s affirmative defense of the statute of limitations, we do not reach the challenge to the plaintiffs experts’ testimony.
DISCUSSION
¶ 10. Statutory interpretation is a question of law reviewed de novo. Page v. Univ. of S. Miss., 878 So.2d 1003, 1005 (¶4) (Miss. 2004). The discovery rule is applicable to wrongful-death actions brought under the MTCA. Caves v. Yarbrough, 991 So.2d 142, 146 (¶13) (Miss. 2008). “[T]he limitations period' for MTCA claims does not begin to run until all the elements of a tort exist, and the claimant knows or, in the exercise of reasonable diligence, should know of both the injury and the act or omission which caused it.” Id. at 155 (¶53). “Waiver is a matter of law where the material facts and circumstances are undisputed or clearly established.” Bott v. J.F. Shea Co., 388 F.3d 530, 534 (5th Cir. 2004) (quoting First Interstate Bank of *1142 Ariz. v. Interfund Corp., 924 F.2d 588, 595 (5th Cir. 1991)). Whether a delay is unreasonable will be determined on a case-by-case basis, MS Credit Ctr. v. Horton, 926 So.2d 167, 181 (¶45) (Miss. 2006).
I. Hampton filed her complaint outside of the statute of limitations.
¶ 11. The parties agree that the discovery date and start of Hampton’s one-year limitations period was at the latest November 12, 2010. The parties dispute whether the final ninety-day period to file provided in section 11-46-11(3) (combined with the remaining five days of the original one-year statute of limitations) begán running on February 10, 2012, at the expiration of the ninety-five-day tolling period following UMC’s receipt of notice of the claim, or on February 28, 2012, upon UMC’s denial of Hampton’s claim.
¶ 3.2. Prior to 2012, section 11-46-11(3) provided in relevant part:
.All actions brought under the provisions of this chapter shall be commenced .within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase, of the action is based, and not after; provided, however, that the filing of. a notice of claim as required by subsection (1) of this section shall serve to toll the statute of limitations for a period of ninety-five (95) days from the date the chief executive officer of the state agency receives the notice of claim ... during which time no action may be maintained by the claimant unless the claimant has received a notice of denial of claim. After the tolling period has expired, the claimant shall then have an additional ninety (90) days to file any action against the governmental entity served with proper claim notice. However, should the governmental entity deny any such claim, then the additional ninety (90) days during which the claimant may file an action shall begin to run upon the claimant’s receipt of notice of denial of claim from the governmental entity.[4]
¶ 13. The Mississippi Supreme Court interpreted section 11-46-11(3) in Page v. University of Southern Mississippi, 878 So.2d 1003, 1008 (¶21) (Miss. 2004), including a sample hypothetical of the current scenario in which a plaintiffs claim is denied after, the tolling period expires. Justice Carlson for the Court concluded that the days remaining are counted from “the date on which the ... tolling period ended,” not the date of the denial. Id.
¶ 14. In 2012, the Legislature “clarified” the statute, making explicit that the statute resumes running from “whichever comes first”—the claim’s denial or the expiration of the ninety-five-day 'tolling period. Following the clarification, section 11-46-ll(3)(b) states:
No action whatsoever may be maintained by the claimant until the claimant receives a notice of denial of claim or the tolling period expires, whichever comes first, after which the claimant has an additional ninety (90) days to file suit; failure to file within the time allowed is an absolute bar to any further proceedings under this chapter;
In essence, the Legislature incorporated the legal rule of the Page hypothetical ■directly into the statute.
¶ 15. Hampton argues that the applicable scenario outlined in Page was mere *1143 dicta, and that the original version of the statute should be construed so that the ninety days will begin to run after the expiration of the ninety-five days or after receipt of denial of the‘claim, even if that receipt comes after the expiration of the ninety-five-day tolling period. This Court treated the Page interpretation of the statute as compelling authority in Farmer v. Bolivar County, 910 So.2d 671, 673 (¶10) (Miss. Ct. App. 2005). Dicta encompass “opinions of a judge which do not embody the resolution or determination of the court.” Black’s Law Dictionary (Rev. 4th ed. 1968); see also Deer Island Fish & Oyster Co. v. First Nat’l Bank, 166 Miss. 162, 146 So. 116, 119 (1933). The scenarios outlined by the supreme court in Page clearly embodied the resolution of the court’s interpretation of the statute and were included as guidance for applying the court’s determination.
¶16. Regardless, our courts have long followed the principle that
[i]n construing a statute, a- court may look to later acts of the legislature to ascertain the correct meaning of a prior statute. Warner v. Board of Trustees, 359 So.2d 345, 348 (Miss. 1978) (citing Crosby v. Barr, 198 So.2d 571 (Miss. 1967)). This principle of statutory construction is well recognized, and its sense is apparent. Construing amendments as clarifications of former statutes “removes a great deal of uncertainty in a law.” 2A Sutherland, Statutory Construction, § 49.11 (Sands ed. 1985).
Grant Ctr. Hosp. of Miss. v. Health Grp. of Jackson, Miss., 528 So.2d 804, 810 (Miss. 1988). Here, we do not even have to “construe” the revision as a clarification because the title of the 2012 amendment explicitly describes its purpose as “to clarify” the statute of limitations. Considering the Legislature’s declared intent to “clarify,” along with the fact that the revisions operated to. incorporate the previous interpretation of the statute from the Mississippi Supreme Court, we find that the Page interpretation was not dicta, and is controlling over the previous version of the. statute. :
¶ 17. The discovery date of Hampton’s cause of action was November 12, 2010. UMC received notice of Hampton’s claim on November 7, 2011. The ninety-five-day tolling period ended on February 10, 2012. UMC denied Hampton’s claim on February 28, 2012, but the remaining five days in the original one-year statute are calculated from February 10, 2012, the date on which the tolling period expired. The five days remaining in the original limitations period combined with the final ninety days expired- on May 15, 2012. Hampton filed her complaint on May 29, 2012, fourteen days outside of the limitations period.
II. UMC did not waive its statute-of-limitations defense.
¶ 18. Hampton argues that UMC waived its statute-of-limitations defense by waiting to file for summary judgment almost a year after Hampton filed her complaint. UMC argues that. Hampton’s complaint did not provide sufficient facts for UMC to know the date Hampton discovered that she had a claim, and that it filed for summary judgment within a reasonable time of Hampton’s deposition testimony establishing November 12, 2010, as the latest possible discovery date of her wrongful-death claim.
¶ 19. “A defendant’s failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which .would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as waiver.” Estate of Grimes v. Warrington, 982 So.2d 365, 370 (¶22) (Miss. 2008) *1144 (quoting Horton, 926 So.2d at 181). “[T]o pursue an affirmative defense [means] ‘to plead it, bring it to the court’s attention, and request a hearing.’ ” Id. at (¶23) (citing Horton, 926 So.2d at 181). Whether a delay is unreasonable will be determined on a case-by-case basis. Horton, 926 So.2d at 181 (¶45).
¶20. Hampton argues that the Mississippi Supreme Court found waiver of the right to compel arbitration after an unreasonable eight-month delay. Id. In Horton, the defendant unreasonably delayed in bringing its arbitration defense before the trial court for adjudication by substantially engaging in the litigation process for eight months, during which it consented to a scheduling order, engaged in written discovery, and conducted the plaintiffs deposition before asserting the right to compel arbitration. Id. at 180 (¶41). While declining to set a minimum time after which a delay is unreasonable, the court held that—“absent extreme and unusual circumstances—an eight[-]month unjustified delay in the assertion and pursuit of any affirmative defense or other right which, if timely pursued, could serve to terminate the litigation, coupled with active participation in the litigation process, constitutes waiver as a matter of law.” Id. at 181 (¶45).
¶ 21. In Estate of Grimes, the supreme court held that the defendant waived his MTCA-immunity defense by waiting five years after initially pleading the defense to bring it to the court’s attention via a motion for summary judgment. Estate of Grimes, 982 So.2d at 370 (¶22). The case had been set for trial twice following the designation and deposition of experts. Id. The court noted that the defendant “offers no explanation as to why he did not move the lower court for summary judgment until [five years into litigation]. He offers no evidence that any information needed to assert this affirmative defense was not available to him from the inception of the litigation.” Id. at (¶26).
¶ 22. When waiver is asserted, we look to whether the delay in raising the defense was reasonable to determine if waiver has occurred. When the affirmative defense pleaded is statute of limitations, and the claim is one in which a plaintiff can claim the benefit of the discovery rule, and the complaint does not allege facts disclosing the discovery date, it follows that some participation in litigation may be reasonable or necessary to uncover the facts needed to successfully bring the defense to the court’s attention for adjudication. UMC’s uncertainty at the time of its answer and during the initial discovery process as to when the statute of limitations began to run did not defeat its ability to pursue the defense as the date of discovery of the cause of action became known. See Jones v. Fluor Daniel Servs., 32 So.3d 417, 421 (¶12) (Miss. 2010) (holding that the defendant sufficiently pleaded the affirmative defense in its answer by stating “[t]he plaintiffs’ claims, to the extent any are stated, may be barred by statutes of limitations”).
¶ 23. UMC’s motion to dismiss following Hampton’s third failure to appear at a noticed deposition shows that UMC’s participation in the litigation through the discovery process attempted to gather information necessary to assert its affirmative defenses. UMC’s motion to dismiss plainly asserts that “[t]he plaintiffs blocking of initial basic discovery has prevented the defendant from evaluating certain affirmative defenses to determine if motions should be made.”
¶ 24. In Horton and similar cases where the defendant was found to have waived its right to raise the affirmative defense of arbitration, the plaintiff was the one who suffered prejudice due to the expense and effort of engaging in discovery—an ex *1145 pense that would be redundantly incurred if the plaintiff were forced to start over in arbitration proceedings. See Citibank N.A. v. Stovall, 2014-CA-01410-COA, 211 So.3d 700, 702-03, 2016 WL 225169, at *3 (¶11) (Miss. Ct. App. Jan. 19, 2016). This concern is not present here where the general delay in litigation occurred due to the plaintiffs refusal to timely and actively participate in moving the litigation forward, and where the termination of the litigation is with prejudice. While a successful MTCA-immunity defense in Estate of Grimes would have similarly terminated the litigation with prejudice, the plaintiff in that case suffered prejudice by actively participating in the litigation for five years, participation that included the designation and deposition of experts and twice setting the case for trial.
¶ 25. UMC provided a reasonable justification for why it did not move the trial court for summary judgment until months after the complaint was filed. UMC lacked exact knowledge of when the plaintiff discovered the claim necessary to present its statute-of-limitations defense. Hampton’s complaint did not plead the date the claim was discovered or include facts that would indicate the discovery date of her claim. UMC pleaded the defense and then timely pursued discovery of the information needed to successfully bring the defense to the court’s attention. Frustrated in its pursuit of discovery, UMC first moved to compel discovery and later moved that the complaint be dismissed for Hampton’s refusal to engage in discovery. Once UMC gained the necessary information via Hampton’s deposition, it promptly filed a motion for summary judgment on the basis of its defense and pursued the court’s adjudication of its defense. Had UMC filed for summary judgment prior to receiving information indicating a discovery date of the plaintiffs claim, it would not have been able to support its motion with evidence of when the statute of limitations began to run and therefore of when it expired. Considering the course of proceedings of this case below, UMC did not waive its right to claim its affirmative statute-of-limitations defense.
CONCLUSION
¶ 26. Even after accounting for the relevant tolling periods, Hampton filed her claim outside of the one-year statute of limitations. UMC did not waive its statute-of-limitations defense by waiting to file for summary judgment until discovery produced the facts necessary to determine the start date of the running of the statute. Because we reverse and render on procedural grounds, we do not reach the issues raised by UMC concerning the testimony of Hampton’s expert witnesses at trial.’
¶ 27. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, IS REVERSED AND RENDERED, ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, FAIR AND WILSON, JJ., CONCUR. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. CARLTON AND JAMES, JJ., NOT PARTICIPATING.

. The autopsy was conducted at the Mississippi state medical examiner’s office in Jackson by Dr. Adel Shaker.

. UMC’s Mississippi Rule of Appellate Procedure 10(b) certificate states that "[t]he record is missing the transcript of the June 20, 2013 hearing on the motion for summary judgment filed by UMC, The transcript was specifically included in this party's designation of the record.”

. At the start of trial on November 4, 2013, counsel for UMC stated, "First of all, we have a summary judgment motion that the Court took under advisement .... ” The court responded, "Let me go ahead and rule on it. I had reviewed it on last week [sic] these matters coming up for the trial. The Court reviewed the motion for summary judgment and the Court found it not to be well taken and that matter will be denied.”

. For purposes of appeal we will generally apply the version of the statute in effect at the time. See Estate of Elmore v. Williams, 150 So.3d 700, 701 n.1 (Miss. 2014). “A statute will not be given retroactive effect unless it is manifest from the language that the legislature intended it to so operate.” Mladinich v. Kohn, 186 So.2d 481, 483 (Miss. 1966).