IRVING, P.J.,
DISSENTING:
¶ 28. It is undisputed that UMC failed to discover a laceration to Smith’s heart after he was transported to UMC for emergency treatment for a stab wound. It is also undisputed that Smith died as a result of the bleeding that occurred from the undetected heart injury.
¶ 29. However, the majority, finding that Hampton’s lawsuit against UMC was untimely, reverses and renders the judgment of the Hinds County Circuit Court, which *1146 had found that UMC’s negligence was the proximate cause of Smith’s death. I would find that the statute of limitations was not a bar to Hampton’s lawsuit because, in my view, UMC—by engaging in litigation not specifically designed to gather information supportive of its statute-of-limitations defense-waived that defense. Consequently, I dissent. I would affirm the judgment of the circuit court.
,.¶30. The majority finds that “UMC did not waive its statute-of-limitations defense by waiting to file for summary judgment until discovery produced the facts necessary to determine the start date of the running of the statute.” I agree that UMC was entitled to conduct a reasonable amount of discovery to support its belief and assertion in its answer that the statute of limitations had run prior to Hampton filing her lawsuit. However, a close scrutiny of all of the discovery that was conducted by UMC in this case reveals that its initial focus was not limited to gathering information to support its statute-of-limitations defense and that it participated in the litigation after it had acquired therele-vant information.
¶ 31. Hampton filed her lawsuit against UMC on May 29, 2012. From the. date of the filing of her lawsuit until February 2013, Hampton, a non-lawyer, represented herself. On September 21, 2012, UMC answered Hampton’s complaint and propounded interrogatories to her. When she did.not timely answer them, UMC filed a motion to compel, which the circuit court granted on December 12, 2012. In compliance with the court order, Hampton answered the interrogatories. In the meantime, beginning in January 2013, UMC had-made two unsuccessful attempts to take Hampton’s deposition. So UMC filed a motion to dismiss Hampton’s complaint because of her failure to sit for a deposition. At that point, Hampton obtained counsel, and her counsel responded to UMC’s motion to dismiss and offered to proceed with Hampton’s deposition. UMC deferred taking Hampton’s deposition until after it could obtain a hearing on its motion to dismiss. The circuit court denied the motion, and then UMC agreed to a scheduling order setting the case for trial on November 4, " 2013, even though it had not taken Hampton’s deposition.
¶ 32. After the agreed scheduling order was entered, UMC took Hampton’s deposition, along with another person’s, on May 1, 2013. The medical deposition of Dr. Douglas Soltys was'taken on May 22, 2013. On May 28, 2013, UMC filed its motion for. summary judgment, asserting as the sole basis that Hampton’s complaint was untimely because the statute of limitations had run prior to her filing it. It is not entirely clear from the record if UMC ever noticed for hearing its motion for summary judgment.[5] The majority, apparently citing UMC’s Mississippi Rule of Appellate Procedure 10(b)(5) certificate as authority, says that-a hearing was held on UMC’s motion for summary judgment on June 20, 2013.[6] However, a review of the record in its totality points to one inescapable conclusion: There is simply no compelling evidence in the record before this Court that UMC ever brought its motion for summary judgment on for hearing prior to the *1147 date of the trial. First, as stated, there is nothing in the record showing that the motion was ever noticed for hearing. Second, the docket does not show that a hearing was either scheduled or had on June 20, 2013, In fact, the docket does not reflect any entry at all for June 20, 2013; Third, after UMC filed its Rule 10(b)(5) certificate on April 10, 2015, it filed a motion with the Mississippi Supreme Court on May 1, 2015, to suspend briefing, which was granted by the supreme court on May 6, 2015. On Thursday, May 7,2015, the court reporter for the circuit court sent an e-mail to the Clerk of the Supreme Court and Court of Appeals (Clerk) stating: “The transcript was re-filed on Tuesday and given to the Hinds County Clerk’s Office. Please forgive my incomplete record. All the proposed changes to the record were made true and correct.” The refiled record consists of two supplemental volumes, and neither volume contains a transcript of a June 20, 2013 hearing. Nor is there any further objection or complaint from UMC regarding the record not containing the alleged June 20, 2013 hearing transcript. On June 4, 2015, the Clerk issued notice that the briefing schedule had resumed.
¶ 33. In any event, the motion for summary judgment was not ruled upon until the date of the trial—November 4, 2013— and UMC participated in substantial discovery—without pushing for a hearing on its motion for summary judgment—after learning for certain on May 1, 2013, that Hampton’s suit should be time-barred. More specifically, UMC participated ' in written discovery and the following depositions after it had learned the date that Hampton was aware that she had a cause of action against it: Dr. Mildra Anthony on October 24, 2013, at the instance of UMC; Dr. Zain Khalpey, taken in. Tucson, Arizona, on October 19, 2013; and Dr.- Evan Underwood, taken on October 26, 2013. Had UMC included an interrogatory requesting the date that Hampton learned that she had a cause of action against UMC, it would have had that information as early as December 2012. During oral argument, UMC admitted , that it did not submit an interrogatory seeking any information as to when Hampton learned that she had a cause of action against UMC. UMC further admitted that it did not limit the scope of its discovery to obtaining information that would support its affirmative defenses. Perhaps the reason that UMC did not submit such an interrogatory is because it already had the information, as the record is clear that UMC knew even before Hampton filed her complaint that Hampton knew or believed as early as November 8, 2010—the date of Smith’s death—that .his death was caused by UMC’s negligence. The portion of the record that makes that clear is Hampton’s notice-of-claim letter that she had hand-delivered to James E. Keeton, M.D., chief executive officer of UMC, on November 7, 2011.1 quote the pertinent portions of that letter:
On October 31, 20Í0, in Márion County, Mississippi, Kimrick Smith suffered a stab wound to the chest. While he was initially taken to Marion County Hospital, he was immediately transferred to Forrest General in Hattiesburg, Mississippi, then taken by Aireare to University of Mississippi Medical- Center (“UMMC”) and attended by various personnel. Marion County Hospital personnel noted that the .patient needed a CT Scan with contrast to address concerns about a possible vascular injury. During his stay at UMMC, Mr. Smith continued to bleed from his chest wound. This condition remained untreated and/or undiagnosed and/or misdiagnosed and/or inadequately treated during, his stay at UMMC. He was discharged on Novem *1148 ber 3, 2010, having never received the explicitly recommended CT Scan with contrast, despite the fact that such a scan was indicated by an ST elevation on his ECG.
On November 8, 2010, Mr. Smith was brought to the Marion General Hospital with a syncopal episode. Mr. Smith died shortly after admission. It is Ms. Hampton’s belief and allegation, based on information obtained from both the Marion General Hospital and the Marion Coroner that Mr. Smith’s death was occasioned by injured [sic] from the stab wound he suffered on October 31, 2010. It is also Ms. Hampton’s belief and allegation that UMMC failed to properly diagnose and treat Mr. Smith and, further, improperly discharged Mr. Smith, all contributing to and resulting in Mr. Smith’s death.
¶ 34.-So it is clear to me that UMC was not diligent in making the effort to acquire the information that it felt it needed to support its statute-of-limitations defense and that it participated in litigation for over six months after it had acquired the requisite information from Hampton’s deposition testimony.
¶ 35. While it is clear that Hampton did not file her lawsuit within one year as required by Mississippi Code Annotated section 11-46-11 (Rev. 2012), it is also equally clear to me that UMC’s participation in the litigation for over six months after it had all the information it needed to end the litigation should operate as a waiver of its statute-of-limitations affirmative defense. See E. Miss. State Hosp. v. Adams, 947 So.2d 887, 891 (¶10) (Miss. 2007) (holding that the “defendants waived the defenses ... by failing to pursue them until almost two years after they raised them in their answer while actively participating in the litigation”).
1136. “A defendant’s failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver.” MS Credit Ctr., Inc. v. Horton, 926 So.2d 167, 180 (¶44) (Miss. 2006). In Horton, the appellant waited eight months to compel arbitration and the court ruled it was an unjustified delay. Our supreme court held in Horton “that—absent extreme and unusual circumstance—an eight month unjustified delay in the assertion and pursuit of any affirmative defense or other right which, if timely pursued, could serve to terminate the litigation, coupled with active participation in the litigation process, constitutes waiver as a matter of law.” Id. at 181 (¶45), Our supreme court also stated in Estate of Grimes ex rel. Wrongful Death Beneficiaries v. Warrington, 982 So.2d 365, 370 (¶27) (Miss. 2008):
[The appellee] asserted his affirmative defense in his answer, but rather than filing a motion to dismiss on this ground, he proceeded substantially to engage [in] the litigation process by consenting to a scheduling order, participating in written discovery, and conducting depositions. This Court finds that [the appel-lee’s] failure actively and specifically to pursue his MTCA affirmative defense while participating in the litigation served as a waiver of the defense.
(Emphasis added).
¶ 37. As stated, Hampton filed her lawsuit against UMC on May 29, 2012, and on September 21, 2012, UMC filed its answer, asserting its statute-of-limitations defense, but it did not file its motion for summary judgment on that ground until May 28, 2013. While it is true that beginning in January 2013, UMC sought unsuccessfully to take Hampton’s deposition at least two *1149 or three times, it waited approximately four months before it even answered Hampton’s complaint and then another three months before it attempted to take her deposition. And the discovery that it sought in the first three months following the date of the filing of its answer, which included the statute-of-limitations affirmative defense, was not even designed to solicit information in support of that affirmative defense.
¶ 38. And so I reiterate—even if UMC’s motion for summary judgment had been heard on June 20, 2013, and taken under advisement by the circuit judge—it seems to me that UMC’s failure to take any action prior to the November 4, 2013 trial date to prod the circuit court into ruling on the motion for summary judgment prior to participating in several expensive depositions in October—just days before the trial—must be taken as either an abandonment of the motion or a waiver of its statute-of-limitations affirmative defense.
¶ 39. For the reasons stated, I dissent. I find no reversible error and would affirm the judgment of the circuit court.

. The docket sheet reflects that a notice of hearing was filed on June 14, 2013, but the type of hearing that was being noticed is not specified.

. The majority correctly quotes the statement made by the circuit judge on the morning of the trial about the matter having been taken under advisement, It is noteworthy, however, that neither the circuit judge nor UMC’s attorney mentioned that the motion for summary judgment had been heard on June 20, 2013, and taken under advisement on that date.