United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 19, 2004**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

—————————————

No. 03-41305

—————————————

JOHN BOTT,

Plaintiff,

versus

J.F. SHEA CO., INC. And SHEA/KEEFE,

Defendants - Third Party Plaintiffs - Appellees,

versus

GULF COAST GROUTING, INC.,

Third Party Defendant - Appellant.

———————————————————————————————————————————

Appeal from United States District Court
for the Southern District of Texas

———————————————————————————————————————————

Before SMITH, WIENER and PICKERING, Circuit Judges.

PICKERING, Circuit Judge.

### OVERVIEW

This case involves the failure of a subcontractor, Gulf Coast Grouting, Inc., ("Gulf

Coast"), to obtain an insurance policy indemnifying the prime contractor, Shea/Keefe, a joint

venture, from liability claims arising from the performance of the subcontract entered into

between the parties. Shea/Keefe was a joint venture formed by J.F. Shea Company, Inc., ("J.F.

Shea") and L.J. Keefe Company in which J.F. Shea was an eighty percent owner of the joint

venture and L.J. Keefe owned the other twenty percent. J.F. Shea was the managing partner of

the joint venture and administered the subcontract with Gulf Coast. The subcontract required

Gulf Coast to procure insurance to indemnify the joint venture from liability and specifically provided that the additional insured was to be Shea/Keefe, the joint venture. However, the contract administrator for Shea/Keefe used J.F. Shea forms that directed Gulf Coast to obtain insurance naming J.F. Shea as the additional insured. Gulf Coast obtained insurance coverage in compliance with the directive of Shea/Keefe's contract administrator, but contrary to the subcontract requirement. This factual overview forms the background for this litigation

PROCEEDINGS BELOW

After Gulf Coast's performance under the subcontract was completed, a personal injury suit was brought by John Bott ("Bott"), an employee of Gulf Coast, against contractors Shea/Keefe and J.F. Shea for personal injuries he suffered while working for the subcontractor. After Bott filed suit, J.F. Shea and Shea/Keefe joined Gulf Coast and Gulf Coast's insurance carrier, Mid-Continent Casualty Company (Mid-Continent") as third-party defendants and filed a third-party complaint against Gulf Coast seeking indemnity under the Subcontract Agreement ("subcontract"), or, in the alternative, for breach of contract.

Shea/Keefe settled the personal injury suit with Bott. Thereafter, all parties filed cross-motions for summary judgment on the indemnity issue and on the additional insured coverage issue involving Mid-Continent. The parties consented to trial before a magistrate judge who denied the cross-motions on indemnity but granted Mid-Continent's motion on lack of coverage. He then scheduled the matter for a jury trial to allocate negligence between Shea/Keefe and Gulf Coast. The jury determined that Bott's injuries were the result of the sole negligence and willful misconduct of Shea/Keefe, rendering the indemnity provision inapplicable.

2

Thereafter, Shea/Keefe filed a motion for summary judgment against Gulf Coast alleging a breach of the subcontract for Gulf Coast's failure to procure insurance naming Shea/Keefe as an additional insured under the Mid-Continent policy. Gulf Coast responded with a cross-motion for summary judgment asserting affirmative defenses of quasi-estoppel and waiver, among others.

The magistrate judge denied Shea/Keefe's motion but granted Gulf Coast's motion on the basis of quasi-estoppel. Shea/Keefe and J.F. Shea appealed the district court's rulings and a different panel of this court affirmed the granting of Mid-Continent's motion on coverage but reversed the granting of Gulf Coast's motion on quasi-estoppel grounds. *See Bott v. J.F. Shea Co., Inc.,* 299 F.3d 508 (5th Cir. 2002). The panel held that while quasi-estoppel is a recognized equitable defense under Texas law, Gulf Coast had an adequate remedy at law in that the facts of the case "set up a claim for waiver and not estoppel." *Id.* at 513.

On remand, the parties re-filed cross-motions for summary judgment. The district court granted Shea/Keefe's motion and denied Gulf Coast's. The court concluded that there were no fact issues concerning Gulf Coast's waiver or other affirmative defenses and that the court was precluded from finding estoppel under the law of the case as established by the prior appeal to this court. In reaching the conclusion that waiver was not applicable, the magistrate judge observed that waiver requires a finding of intentionality. He then concluded that because this court had previously characterized Shea/Keefe's behavior as negligent, Gulf Coast could not prove intentional conduct that would constitute waiver. Gulf Coast appealed both the granting of Shea/Keefe's motion for summary judgment and the denial of its own motion for summary judgment. Concluding that the district court erred, we Reverse the summary judgment granted to Appellees, J.F. Shea and Shea/Keefe, and Render judgment to Appellant, Gulf Coast, on its

3

motion for summary judgment.

UNDERLYING FACTS

The City of Houston awarded a bid for five simultaneous sewer construction projects to the joint venture of Shea/Keefe. In 1996, Shea/Keefe and J.F. Shea began negotiations with Gulf Coast to perform a portion of the work under a subcontract. There is no evidence in the record to indicate that insurance requirements were a part of the negotiations. On December 3, 1996, Bonnie L. Senkowski, the contract administrator for Shea/Keefe and J.F. Shea,[1] sent a letter to Gulf Coast, enclosing instructions on obtaining insurance coverage and instructing Gulf Coast to send the instructions to Gulf Coast's insurance carrier. Gulf Coast sent the instructions to its agent, Turner & Associates in Tecumseh, Oklahoma.

The December 3d letter also stated that an executed certificate of insurance confirming the required coverage in conformity with the instructions was to be provided to Shea/Keefe prior to the commencement of work by Gulf Coast. The instructions forwarded to Turner & Associates required that "J.F. Shea Co., Inc." be named as an additional insured, not Shea/Keefe. Turner issued an endorsement as directed by Shea/Keefe.

On January 24, 1997, the parties executed the Subcontract Agreement. A paragraph of the Subcontract required that a certificate of insurance be provided prior to the commencement of the work by Gulf Coast. This paragraph of the subcontract further provided that the additional insured under the certificate of insurance was to be the "Contractor." This particular paragraph

---

[1] Even though the parties refer to Ms. Senkowski as the contract administrator for Shea/Keefe, the executed Subcontract Agreement refers to her as the contract administrator for J.F. Shea Co., Inc. Apparently, she was acting in that capacity for both J.F. Shea and the joint venture, Shea/Keefe.

did not identify the "Contractor," although "Shea/Keefe (a joint venture)" was identified in the opening lines of the subcontract as the "Contractor." However, the subcontract was executed on page ten by "Contractor: J.F. Shea Co., Inc."[2]

The first certificate of insurance which named J.F. Shea Co., Inc., as an additional insured was issued by Turner & Associates on February 11, 1997. It was sent to Bonnie Senkowski. There was no objection from Shea/Keefe to this certificate. On or about September 24, 1997, with the renewal of the prior policy, a second certificate of insurance was forwarded to Bonnie Senkowski. This certificate again named J.F. Shea Co., Inc. as an additional insured, to which, again, there was no objection from Shea/Keefe.

Bott was injured on or about February 9, 1998, some three and one-half months after the second insurance certificate was issued. Gulf Coast ultimately completed its work under the subcontract and was paid in full prior to Bott's filing suit. Shea/Keefe did not object to the fact that J.F. Shea Co., Inc., was named as the additional insured rather than Shea/Keefe until after Bott filed suit.

STANDARD OF REVIEW

Review of the district court's grant of summary judgment is *de novo* applying the same standards as the district court. *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.,* 322 F.3d 847, 853 (5th Cir. 2003). Summary judgment should be granted only when there is "no genuine issue as to any material fact[.]" Fed. R. Civ. P. 56 (c); *Wyatt v. Hunt Plywood Co.*, 297

---

[2] The subcontract was signed by Bonnie L. Senkowski as the "Contract Administrator" for "Contractor: J.F. Shea Co., Inc."

F.3d 405, 408-09 (5th Cir. 2002). The summary judgment standard calls for the court to review the evidence and the inferences to be drawn therefrom in the light most favorable to the non-moving party. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)(*cert. denied* 534 U.S. 951 , 122 S.Ct. 347 , 151 L.Ed.2d 262 (2001)).

ANALYSIS

Gulf Coast does not contest that it failed to comply with the subcontract's requirement that it obtain insurance naming Shea/Keefe as an additional insured. Having failed in its quasi-estoppel argument, however, Gulf Coast now defends its conduct on the ground that Shea/Keefe waived its contractual rights when Bonnie Senkowski gave erroneous instructions to Gulf Coast on the procurement of insurance; Shea/Keefe received two non-conforming certificates without objection; and then, Shea/Keefe allowed Gulf Coast to start and complete the project prior to any complaint about the deficiency.

Under Texas law "[w]aiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Sun Exploration and Production Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987).[3] "Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the facts and circumstances." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003)(per curiam).

"Silence or inaction, for so long a period as to show an intention to yield a known right, is also enough to prove waiver." *Tenneco Inc. v. Enterprise Products Co.*, 925 S.W.2d 640, 643

---

[3] Jurisdiction in this case was originally based on diversity, but now rests on supplemental jurisdiction under 28 U.S.C.A. § 1367. Thus, we apply the substantive law of Texas. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

(Tex. 1996) (other citation omitted). Additionally, "an obligee may waive the obligor's requirement for strict compliance with the terms of the contract if the obligee expressly or implicitly assents to the obligor's nonconforming conduct." *Fairfield Financial Group, Inc. v. Gawerc*, 814 S.W.2d 204, 209 (Tex. App.-Houston [1st Dist.], 1991, no writ).

Waiver is generally a question of fact, except where the facts and circumstances are either admitted or clearly established. *Tenneco*, 925 S.W.2d at 643. "[T]he issue of waiver becomes a matter of law only where material facts and circumstances are undisputed or clearly established and there is no room for argument or inference." *First Interstate Bank of Arizona, N.A. v. Interfund Corp.*, 924 F.2d 588, 595 (5th Cir. 1991)(citing *Herider Farms-El Paso Inc. v. Criswell*, 519 S.W.2d 473, 478 (Tex.Civ.App.-El Paso, 1975, writ ref'd n.r.e.)).

Shea/Keefe argues that the non-waiver provision of Section 11 of the subcontract is conclusive proof that the insurance requirement was not waived. That section provides, in pertinent part, that

> Contractor's failure to enforce any of the provisions of this Section 11 shall not act as a waiver of Subcontractor's obligation to procure the required insurance or as a waiver to the enforcement of any of these provisions at a later date.

Texas courts consider a contract's non-waiver clause to be "some evidence of non-waiver," but not a substantive bar to finding that a particular provision was indeed waived. *Enserch Corp. v. Rebich*, 925 S.W.2d 75, 82 (Tex. App.-Tyler, 1996, writ dism'd by agr.).

Gulf Coast also argues that the insurance requirement was a condition precedent to its performance under the contract, and Shea/Keefe's failure to enforce its right (to terminate the contract) for the failure of Gulf Coast to comply with the precondition (requiring the insurance

7

before performance) is further evidence of the waiver of the insurance requirement. Not only did Shea/Keefe allow Gulf Coast to start work without the required insurance, but it allowed Gulf Coast to complete the work and paid Gulf Coast in full without the required insurance. "A condition precedent is an event that must happen,or be performed, before a right can accrue to enforce an obligation." *See Centex Corp. v. Dolton*, 840 S.W.2d 952, 956 (Tex. 1992).

The doctrine of condition precedent is ordinarily invoked to show that there was no contract to be breached since a condition necessary to its formation did not occur. *See, e.g., McMahon v. Greenwood*, 108 S.W.3d 467, 484 (Tex. App.-Hous. (14 Dist.), 2003, pet. denied). To invoke the doctrine in the manner asserted by Gulf Coast as a defense to a breach is unusual. Nevertheless, we note that "[a] condition precedent may be waived, *Kennedy v. McMullen*, 39 S.W.2d 168, 174 (Tex.Civ.App.-Beaumont, 1931, writ ref'd), and the waiver of a condition precedent may be inferred from the party's conduct." *Sun Exploration*, 728 S.W.2d at 37(citing *Ames v. Great Southern Bank*, 672 S.W.2d 447, 449 (Tex. 1984)).

Based on our review of the record, we conclude that the undisputed facts in this case establish as a matter of law that Shea/Keefe waived the insurance requirement both by "intentional conduct inconsistent with claiming [the] right" to have Shea/Keefe named as an additional insured, *Sun Exploration,* 728 S.W.2d at 37, and by its "[s]ilence and inaction, for so long a period as to show an intention to yield" the right to have Shea/Keefe named as an additional insured. *Tenneco*, 925 S.W.2d at 643.

Gulf Coast also appeals the denial of several other affirmative defenses it raised in the district court. Based on the disposition of the case on the waiver issue, it is not necessary that we address these, and we decline to do so.

## CONCLUSION

We Reverse the district court's grant of summary judgment to Shea/Keefe on the issue of waiver and Render a take nothing judgment in favor of Gulf Coast on its motion for summary judgment on the same issue.

REVERSED AND RENDERED.