# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01079-COA

**UNIVERSITY OF MISSISSIPPI MEDICAL CENTER**                                 **APPELLANT**

**v.**

**KIM HAMPTON, INDIVIDUALLY AND ON**                                 **APPELLEE**
**BEHALF OF KIMRICK SMITH, DECEASED,**
**AND THE WRONGFUL DEATH**
**BENEFICIARIES OF KIMRICK SMITH**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/15/2014 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | LANNY R. PACE EMILIE FISCHER WHITEHEAD |
| ATTORNEYS FOR APPELLEE: | CRYSTAL WISE MARTIN SUZANNE GRIGGINS KEYS SAGE EGGER HARLESS |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| TRIAL COURT DISPOSITION: | $500,000 JUDGMENT ENTERED IN FAVOR OF APPELLEES |
| DISPOSITION: | REVERSED AND RENDERED - 10/11/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1.     The University of Mississippi Medical Center (UMC) appeals an adverse judgment

stemming from a wrongful-death action brought by Kim Hampton following the death of her

son, Kimrick Smith. UMC argues that the trial court erred in denying its pretrial motion for

summary judgment. Because Hampton filed her complaint outside of the one-year statute of

limitations, and because UMC did not waive its statute-of-limitations defense, we reverse and render a judgment in favor of UMC.

## FACTS AND PROCEEDINGS BELOW

¶2.     On October 30, 2010, Smith was stabbed in the torso in Marion County and airlifted to UMC for emergency medical care. He was released on November 3, 2010. On November 8, 2010, Smith died after suddenly collapsing at home in Marion County. The parties agree that Smith's death was caused by blood leaking from a heart wound sustained in the stabbing. The heart injury was not discovered during Smith's treatment at UMC.

¶3.     On November 11 or 12, 2010, Hampton spoke to the doctor who performed the autopsy, who informed her of the heart wound.[1] During this same time period, a lawyer informed Hampton that she could pursue a lawsuit against UMC. The parties agree that November 12, 2010, is the latest possible discovery date by the plaintiff of her cause of action and the start of the one-year statute of limitations.

¶4.     UMC received pre-suit notice of Hampton's wrongful-death claim on November 7, 2011, in accordance with the provisions of Mississippi Code Annotated section 11-46-11 (Rev. 2012). The parties agree that on November 7, 2011, five days remained of the original one-year limitations period. February 10, 2012, marked ninety-five days following UMC's receipt of notice of the claim. On February 28, 2012, UMC denied Hampton's claim.

¶5.     Hampton filed a pro se complaint on May 29, 2012. The complaint did not allege how or when Hampton became aware of her possible claim against UMC, including the fact that

_____

[1] The autopsy was conducted at the Mississippi state medical examiner's office in Jackson by Dr. Adel Shaker.

2

she had a conversation with the doctor who performed the autopsy. UMC's answer to the complaint pleaded generally as an affirmative defense that "[c]laims against this defendant are barred by the applicable statute(s) of limitations."

¶6. UMC propounded interrogatories on the same day it filed its answer. Hampton failed to respond and to attend a hearing on UMC's motion to compel. The court granted the motion to compel and Hampton submitted responses. Hampton then failed to appear at three noticed depositions. Following Hampton's failure to appear at the third scheduled deposition on February 8, 2013, UMC filed a motion to dismiss due to the delay in litigation created by Hampton's repeated failure to engage in the discovery process. UMC asserted that "[t]he plaintiff's blocking of initial basic discovery has prevented the defendant from evaluating certain affirmative defenses to determine if motions should be made." Hampton was finally deposed on May 1, 2013. At that deposition, Hampton disclosed her November 10 or 11, 2010 conversation with the doctor who performed the autopsy on Smith. She also discussed that, around that same time, she had talked with an attorney friend, who informed her that she might have grounds for a suit against the hospital.

¶7. Following receipt of Hampton's deposition transcript, UMC moved for summary judgment on May 28, 2013. It asserted that Hampton's complaint—after accounting for the relevant Mississippi Tort Claims Act (MTCA) tolling periods—was filed fourteen days after the one-year limitations period and therefore barred. Hampton responded that UMC's affirmative defense had been waived and that it lacked merit. A hearing was held on the

motion for summary judgment on June 20, 2013.[2] The court took the motion under advisement, and denied the motion the morning of trial without specifying the grounds for denial.[3]

¶8. After a bench trial, in which the court heard the testimony of various expert witnesses, the court entered a judgment in favor of Hampton on July 15, 2014, in the amount of $500,000, finding that UMC breached its standard of care and that the breach proximately caused or contributed to Smith's death.

¶9. UMC appeals, asserting that it did not waive its valid statute-of-limitations defense. In the alternative, UMC raises various challenges to the plaintiff's experts' testimony. Because we resolve this case on the basis of UMC's affirmative defense of the statute of limitations, we do not reach the challenge to the plaintiff's experts' testimony.

**DISCUSSION**

¶10. Statutory interpretation is a question of law reviewed de novo. *Page v. Univ. of S. Miss.*, 878 So. 2d 1003, 1005 (¶4) (Miss. 2004). The discovery rule is applicable to wrongful-death actions brought under the MTCA. *Caves v. Yarborough*, 991 So. 2d 142, 146 (¶13) (Miss. 2008). "[T]he limitations period for MTCA claims does not begin to run until all the

---

[2] UMC's Mississippi Rule of Appellate Procedure 10(b) certificate states that "[t]he record is missing the transcript of the June 20, 2013 hearing on the motion for summary judgment filed by UMC. The transcript was specifically included in this party's designation of the record."

[3] At the start of trial on November 4, 2013, counsel for UMC stated, "First of all, we have a summary judgment motion that the Court took under advisement . . . ." The court responded, "Let me go ahead and rule on it. I had reviewed it on last week [sic] these matters coming up for the trial. The Court reviewed the motion for summary judgment and the Court found it not to be well taken and that matter will be denied."

elements of a tort exist, and the claimant knows or, in the exercise of reasonable diligence, should know of both the injury and the act or omission which caused it." *Id*. at 155 (¶53). "Waiver is a matter of law where the material facts and circumstances are undisputed or clearly established." *Bott v. J.F. Shea Co.*, 388 F.3d 530, 534 (5th Cir. 2004) (quoting *First Interstate Bank of Ariz. v. Interfund Corp.*, 924 F.2d 588, 595 (5th Cir. 1991)). Whether a delay is unreasonable will be determined on a case-by-case basis. *MS Credit Ctr. v. Horton*, 926 So. 2d 167, 181 (¶45) (Miss. 2006).

### I.     Hampton filed her complaint outside of the statute of limitations.

¶11.   The parties agree that the discovery date and start of Hampton's one-year limitations period was at the latest November 12, 2010. The parties dispute whether the final ninety-day period to file provided in section 11-46-11(3) (combined with the remaining five days of the original one-year statute of limitations) began running on February 10, 2012, at the expiration of the ninety-five-day tolling period following UMC's receipt of notice of the claim, or on February 28, 2012, upon UMC's denial of Hampton's claim.

¶12.   Prior to 2012, section 11-46-11(3) provided in relevant part:

> All actions brought under the provisions of this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based, and not after; provided, however, that the filing of a notice of claim as required by subsection (1) of this section shall serve to toll the statute of limitations for a period of ninety-five (95) days from the date the chief executive officer of the state agency receives the notice of claim . . . during which time no action may be maintained by the claimant unless the claimant has received a notice of denial of claim. After the tolling period has expired, the claimant shall then have an additional ninety (90) days to file any action against the governmental entity served with proper claim notice. However, should the governmental entity deny any such claim, then the additional ninety (90) days during which

5

the claimant may file an action shall begin to run upon the claimant's receipt of notice of denial of claim from the governmental entity.[4]

¶13.    The Mississippi Supreme Court interpreted section 11-46-11(3) in *Page v. University of Southern Mississippi*, 878 So. 2d 1003, 1008 (¶21) (Miss. 2004), including a sample hypothetical of the current scenario in which a plaintiff's claim is denied after the tolling period expires. Justice Carlson for the Court concluded that the days remaining are counted from "the date on which the . . . tolling period ended," not the date of the denial. *Id*.

¶14.    In 2012, the Legislature "clarified" the statute, making explicit that the statute resumes running from "whichever comes first"—the claim's denial or the expiration of the ninety-five-day tolling period. Following the clarification, section 11-46-11(3)(b) states:

> No action whatsoever may be maintained by the claimant until the claimant receives a notice of denial of claim or the tolling period expires, whichever comes first, after which the claimant has an additional ninety (90) days to file suit; failure to file within the time allowed is an absolute bar to any further proceedings under this chapter.

In essence, the Legislature incorporated the legal rule of the *Page* hypothetical directly into the statute.

¶15.    Hampton argues that the applicable scenario outlined in *Page* was mere dicta, and that the original version of the statute should be construed so that the ninety days will begin to run after the expiration of the ninety-five days or after receipt of denial of the claim, even if that receipt comes after the expiration of the ninety-five-day tolling period. This Court treated

---

[4] For purposes of appeal we will generally apply the version of the statute in effect at the time. *See Estate of Elmore v. Williams*, 150 So. 3d 700, 701 n.1 (Miss. 2014). "A statute will not be given retroactive effect unless it is manifest from the language that the legislature intended it to so operate." *Mladinich v. Kohn*, 186 So. 2d 481, 483 (Miss. 1966).

the *Page* interpretation of the statute as compelling authority in *Farmer v. Bolivar County*, 910 So. 2d 671, 673 (¶10) (Miss. Ct. App. 2005). Dicta encompass "opinions of a judge which do not embody the resolution or determination of the court." Black's Law Dictionary (Rev. 4th ed. 1968); *see also Deer Island Fish & Oyster Co. v. First Nat'l Bank*, 166 Miss. 162, 146 So. 116, 119 (1933). The scenarios outlined by the supreme court in *Page* clearly embodied the resolution of the court's interpretation of the statute and were included as guidance for applying the court's determination.

¶16.    Regardless, our courts have long followed the principle that

> [i]n construing a statute, a court may look to later acts of the legislature to ascertain the correct meaning of a prior statute. *Warner v. Board of Trustees*, 359 So.2d 345, 348 (Miss. 1978) (citing *Crosby v. Barr*, 198 So. 2d 571 (Miss. 1967)). This principle of statutory construction is well recognized, and its sense is apparent. Construing amendments as clarifications of former statutes "removes a great deal of uncertainty in a law." 2A Sutherland, *Statutory Construction*, § 49.11 (Sands ed. 1985).

*Grant Ctr. Hosp. of Miss. v. Health Grp. of Jackson, Miss.*, 528 So. 2d 804, 810 (Miss. 1988). Here, we do not even have to "construe" the revision as a clarification because the title of the 2012 amendment explicitly describes its purpose as "to clarify" the statute of limitations. Considering the Legislature's declared intent to "clarify," along with the fact that the revisions operated to incorporate the previous interpretation of the statute from the Mississippi Supreme Court, we find that the *Page* interpretation was not dicta, and is controlling over the previous version of the statute.

¶17.    The discovery date of Hampton's cause of action was November 12, 2010. UMC received notice of Hampton's claim on November 7, 2011. The ninety-five-day tolling period

7

ended on February 10, 2012. UMC denied Hampton's claim on February 28, 2012, but the remaining five days in the original one-year statute are calculated from February 10, 2012, the date on which the tolling period expired. The five days remaining in the original limitations period combined with the final ninety days expired on May 15, 2012. Hampton filed her complaint on May 29, 2012, fourteen days outside of the limitations period.

## II. UMC did not waive its statute-of-limitations defense.

¶18.    Hampton argues that UMC waived its statute-of-limitations defense by waiting to file for summary judgment almost a year after Hampton filed her complaint. UMC argues that Hampton's complaint did not provide sufficient facts for UMC to know the date Hampton discovered that she had a claim, and that it filed for summary judgment within a reasonable time of Hampton's deposition testimony establishing November 12, 2010, as the latest possible discovery date of her wrongful-death claim.

¶19.    "A defendant's failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as waiver." *Estate of Grimes v. Warrington*, 982 So. 2d 365, 370 (¶22) (Miss. 2008) (quoting *Horton*, 926 So. 2d at 181). "[T]o pursue an affirmative defense [means] 'to plead it, bring it to the court's attention, and request a hearing.'" *Id*. at (¶23) (citing *Horton*, 926 So. 2d at 181). Whether a delay is unreasonable will be determined on a case-by-case basis. *Horton*, 926 So. 2d at 181 (¶45).

¶20.    Hampton argues that the Mississippi Supreme Court found waiver of the right to

compel arbitration after an unreasonable eight-month delay. *Id*. In *Horton*, the defendant unreasonably delayed in bringing its arbitration defense before the trial court for adjudication by substantially engaging in the litigation process for eight months, during which it consented to a scheduling order, engaged in written discovery, and conducted the plaintiff's deposition before asserting the right to compel arbitration. *Id*. at 180 (¶41). While declining to set a minimum time after which a delay is unreasonable, the court held that—"absent extreme and unusual circumstances—an eight[-]month unjustified delay in the assertion and pursuit of any affirmative defense or other right which, if timely pursued, could serve to terminate the litigation, coupled with active participation in the litigation process, constitutes waiver as a matter of law." *Id*. at 181 (¶45).

¶21.    In *Estate of Grimes*, the supreme court held that the defendant waived his MTCA-immunity defense by waiting five years after initially pleading the defense to bring it to the court's attention via a motion for summary judgment. *Estate of Grimes*, 982 So. 2d at 370 (¶22). The case had been set for trial twice following the designation and deposition of experts. *Id*. The court noted that the defendant "offers no explanation as to why he did not move the lower court for summary judgment until [five years into litigation]. He offers no evidence that any information needed to assert this affirmative defense was not available to him from the inception of the litigation." *Id*. at (¶26).

¶22.    When waiver is asserted, we look to whether the delay in raising the defense was reasonable to determine if waiver has occurred. When the affirmative defense pleaded is statute of limitations, and the claim is one in which a plaintiff can claim the benefit of the

9

discovery rule, and the complaint does not allege facts disclosing the discovery date, it follows that some participation in litigation may be reasonable or necessary to uncover the facts needed to successfully bring the defense to the court's attention for adjudication. UMC's uncertainty at the time of its answer and during the initial discovery process as to when the statute of limitations began to run did not defeat its ability to pursue the defense as the date of discovery of the cause of action became known. *See Jones v. Fluor Daniel Servs.*, 32 So. 3d 417, 421 (¶12) (Miss. 2010) (holding that the defendant sufficiently pleaded the affirmative defense in its answer by stating "[t]he plaintiffs' claims, to the extent any are stated, may be barred by statutes of limitations").

¶23. UMC's motion to dismiss following Hampton's third failure to appear at a noticed deposition shows that UMC's participation in the litigation through the discovery process attempted to gather information necessary to assert its affirmative defenses. UMC's motion to dismiss plainly asserts that "[t]he plaintiff's blocking of initial basic discovery has prevented the defendant from evaluating certain affirmative defenses to determine if motions should be made."

¶24. In *Horton* and similar cases where the defendant was found to have waived its right to raise the affirmative defense of arbitration, the plaintiff was the one who suffered prejudice due to the expense and effort of engaging in discovery—an expense that would be redundantly incurred if the plaintiff were forced to start over in arbitration proceedings. *See Citibank N.A. v. Stovall*, 2014-CA-01410-COA, 2016 WL 225169, at *3 (¶11) (Miss. Ct. App. Jan. 19, 2016). This concern is not present here where the general delay in litigation

10

occurred due to the plaintiff's refusal to timely and actively participate in moving the litigation forward, and where the termination of the litigation is with prejudice. While a successful MTCA-immunity defense in *Estate of Grimes* would have similarly terminated the litigation with prejudice, the plaintiff in that case suffered prejudice by actively participating in the litigation for five years, participation that included the designation and deposition of experts and twice setting the case for trial.

¶25.　UMC provided a reasonable justification for why it did not move the trial court for summary judgment until months after the complaint was filed. UMC lacked exact knowledge of when the plaintiff discovered the claim necessary to present its statute-of-limitations defense. Hampton's complaint did not plead the date the claim was discovered or include facts that would indicate the discovery date of her claim. UMC pleaded the defense and then timely pursued discovery of the information needed to successfully bring the defense to the court's attention. Frustrated in its pursuit of discovery, UMC first moved to compel discovery and later moved that the complaint be dismissed for Hampton's refusal to engage in discovery. Once UMC gained the necessary information via Hampton's deposition, it promptly filed a motion for summary judgment on the basis of its defense and pursued the court's adjudication of its defense. Had UMC filed for summary judgment prior to receiving information indicating a discovery date of the plaintiff's claim, it would not have been able to support its motion with evidence of when the statute of limitations began to run and therefore of when it expired. Considering the course of proceedings of this case below, UMC did not waive its right to claim its affirmative statute-of-limitations defense.

11

## CONCLUSION

¶26. Even after accounting for the relevant tolling periods, Hampton filed her claim outside of the one-year statute of limitations. UMC did not waive its statute-of-limitations defense by waiting to file for summary judgment until discovery produced the facts necessary to determine the start date of the running of the statute. Because we reverse and render on procedural grounds, we do not reach the issues raised by UMC concerning the testimony of Hampton's expert witnesses at trial.

¶27. **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, FAIR AND WILSON, JJ., CONCUR. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. CARLTON AND JAMES, JJ., NOT PARTICIPATING.**

**IRVING, P.J., DISSENTING:**

¶28. It is undisputed that UMC failed to discover a laceration to Smith's heart after he was transported to UMC for emergency treatment for a stab wound. It is also undisputed that Smith died as a result of the bleeding that occurred from the undetected heart injury.

¶29. However, the majority, finding that Hampton's lawsuit against UMC was untimely, reverses and renders the judgment of the Hinds County Circuit Court, which had found that UMC's negligence was the proximate cause of Smith's death. I would find that the statute of limitations was not a bar to Hampton's lawsuit because, in my view, UMC—by engaging in litigation not specifically designed to gather information supportive of its statute-of-limitations defense—waived that defense. Consequently, I dissent. I would affirm the

judgment of the circuit court.

¶30. The majority finds that "UMC did not waive its statute-of-limitations defense by waiting to file for summary judgment until discovery produced the facts necessary to determine the start date of the running of the statute." I agree that UMC was entitled to conduct a reasonable amount of discovery to support its belief and assertion in its answer that the statute of limitations had run prior to Hampton filing her lawsuit. However, a close scrutiny of all of the discovery that was conducted by UMC in this case reveals that its initial focus was not limited to gathering information to support its statute-of-limitations defense and that it participated in the litigation after it had acquired the relevant information.

¶31. Hampton filed her lawsuit against UMC on May 29, 2012. From the date of the filing of her lawsuit until February 2013, Hampton, a non-lawyer, represented herself. On September 21, 2012, UMC answered Hampton's complaint and propounded interrogatories to her. When she did not timely answer them, UMC filed a motion to compel, which the circuit court granted on December 12, 2012. In compliance with the court order, Hampton answered the interrogatories. In the meantime, beginning in January 2013, UMC had made two unsuccessful attempts to take Hampton's deposition. So UMC filed a motion to dismiss Hampton's complaint because of her failure to sit for a deposition. At that point, Hampton obtained counsel, and her counsel responded to UMC's motion to dismiss and offered to proceed with Hampton's deposition. UMC deferred taking Hampton's deposition until after it could obtain a hearing on its motion to dismiss. The circuit court denied the motion, and then UMC agreed to a scheduling order setting the case for trial on November 4, 2013, even

13

though it had not taken Hampton's deposition.

¶32.    After the agreed scheduling order was entered, UMC took Hampton's deposition, along with another person's, on May 1, 2013. The medical deposition of Dr. Douglas Soltys was taken on May 22, 2013. On May 28, 2013, UMC filed its motion for summary judgment, asserting as the sole basis that Hampton's complaint was untimely because the statute of limitations had run prior to her filing it. It is not entirely clear from the record if UMC ever noticed for hearing its motion for summary judgment.[5] The majority, apparently citing UMC's Mississippi Rule of Appellate Procedure 10(b)(5) certificate as authority, says that a hearing was held on UMC's motion for summary judgment on June 20, 2013.[6] However, a review of the record in its totality points to one inescapable conclusion: There is simply no compelling evidence in the record before this Court that UMC ever brought its motion for summary judgment on for hearing prior to the date of the trial. First, as stated, there is nothing in the record showing that the motion was ever noticed for hearing. Second, the docket does not show that a hearing was either scheduled or had on June 20, 2013. In fact, the docket does not reflect any entry at all for June 20, 2013. Third, after UMC filed its Rule 10(b)(5) certificate on April 10, 2015, it filed a motion with the Mississippi Supreme Court on May 1, 2015, to suspend briefing, which was granted by the supreme court on May

---

[5] The docket sheet reflects that a notice of hearing was filed on June 14, 2013, but the type of hearing that was being noticed is not specified.

[6] The majority correctly quotes the statement made by the circuit judge on the morning of the trial about the matter having been taken under advisement. It is noteworthy, however, that neither the circuit judge nor UMC's attorney mentioned that the motion for summary judgment had been heard on June 20, 2013, and taken under advisement on that date.

14

6, 2015. On Thursday, May 7, 2015, the court reporter for the circuit court sent an e-mail to the Clerk of the Supreme Court and Court of Appeals (Clerk) stating: "The transcript was re-filed on Tuesday and given to the Hinds County Clerk's Office. Please forgive my incomplete record. All the proposed changes to the record were made true and correct." The re-filed record consists of two supplemental volumes, and neither volume contains a transcript of a June 20, 2013 hearing. Nor is there any further objection or complaint from UMC regarding the record not containing the alleged June 20, 2013 hearing transcript. On June 4, 2015, the Clerk issued notice that the briefing schedule had resumed.

¶33. In any event, the motion for summary judgment was not ruled upon until the date of the trial—November 4, 2013— and UMC participated in substantial discovery—without pushing for a hearing on its motion for summary judgment—after learning for certain on May 1, 2013, that Hampton's suit should be time-barred. More specifically, UMC participated in written discovery and the following depositions after it had learned the date that Hampton was aware that she had a cause of action against it: Dr. Mildra Anthony on October 24, 2013, at the instance of UMC; Dr. Zain Khalpey, taken in Tucson, Arizona, on October 19, 2013; and Dr. Evan Underwood, taken on October 26, 2013. Had UMC included an interrogatory requesting the date that Hampton learned that she had a cause of action against UMC, it would have had that information as early as December 2012. During oral argument, UMC admitted that it did not submit an interrogatory seeking any information as to when Hampton learned that she had a cause of action against UMC. UMC further admitted that it did not limit the scope of its discovery to obtaining information that would support its affirmative

15

defenses. Perhaps the reason that UMC did not submit such an interrogatory is because it already had the information, as the record is clear that UMC knew even before Hampton filed her complaint that Hampton knew or believed as early as November 8, 2010—the date of Smith's death—that his death was caused by UMC's negligence. The portion of the record that makes that clear is Hampton's notice-of-claim letter that she had hand-delivered to James E. Keeton, M.D., chief executive officer of UMC, on November 7, 2011. I quote the pertinent portions of that letter:

> On October 31, 2010, in Marion County, Mississippi, Kimrick Smith suffered a stab wound to the chest. While he was initially taken to Marion County Hospital, he was immediately transferred to Forrest General in Hattiesburg, Mississippi, then taken by Aircare to University of Mississippi Medical Center ("UMMC") and attended by various personnel. Marion County Hospital personnel noted that the patient needed a CT Scan with contrast to address concerns about a possible vascular injury. During his stay at UMMC, Mr. Smith continued to bleed from his chest wound. This condition remained untreated and/or undiagnosed and/or misdiagnosed and/or inadequately treated during his stay at UMMC. He was discharged on November 3, 2010, having never received the explicitly recommended CT Scan with contrast, despite the fact that such a scan was indicated by an ST elevation on his ECG.

> On November 8, 2010, Mr. Smith was brought to the Marion General Hospital with a syncopal episode. Mr. Smith died shortly after admission. It is Ms. Hampton's belief and allegation, based on information obtained from both the Marion General Hospital and the Marion Coroner that Mr. Smith's death was occasioned by injured [sic] from the stab wound he suffered on October 31, 2010. It is also Ms. Hampton's belief and allegation that UMMC failed to properly diagnose and treat Mr. Smith and, further, improperly discharged Mr. Smith, all contributing to and resulting in Mr. Smith's death.

¶34. So it is clear to me that UMC was not diligent in making the effort to acquire the information that it felt it needed to support its statute-of-limitations defense and that it participated in litigation for over six months after it had acquired the requisite information

16

from Hampton's deposition testimony.

¶35.    While it is clear that Hampton did not file her lawsuit within one year as required by Mississippi Code Annotated section 11-46-11 (Rev. 2012), it is also equally clear to me that UMC's participation in the litigation for over six months after it had all the information it needed to end the litigation should operate as a waiver of its statute-of-limitations affirmative defense. *See E. Miss. State Hosp. v. Adams*, 947 So. 2d 887, 891 (¶10) (Miss. 2007) (holding that the "defendants waived the defenses . . . by failing to pursue them until almost two years after they raised them in their answer while actively participating in the litigation").

¶36.    "A defendant's failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver." *MS Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 180 (¶44) (Miss. 2006). In *Horton*, the appellant waited eight months to compel arbitration and the court ruled it was an unjustified delay.  Our supreme court held in *Horton* "that—absent extreme and unusual circumstance—an eight month unjustified delay in the assertion and pursuit of any affirmative defense or other right which, if timely pursued, could serve to terminate the litigation, coupled with active participation in the litigation process, constitutes waiver as a matter of law." *Id.* at 181 (¶45). Our supreme court also stated in *Estate of Grimes ex rel. Wrongful Death Beneficiaries v. Warrington*, 982 So. 2d 365, 370 (¶27) (Miss. 2008):

> [The appellee] asserted his affirmative defense in his answer, but rather than filing a motion to dismiss on this ground, he proceeded substantially to engage

17

[in] the litigation process by consenting to a scheduling order, participating in written discovery, and conducting depositions. This Court finds that [the appellee's] failure ***actively and specifically*** to pursue his MTCA affirmative defense while participating in the litigation served as a waiver of the defense.

(Emphasis added).

¶37. As stated, Hampton filed her lawsuit against UMC on May 29, 2012, and on September 21, 2012, UMC filed its answer, asserting its statute-of-limitations defense, but it did not file its motion for summary judgment on that ground until May 28, 2013. While it is true that beginning in January 2013, UMC sought unsuccessfully to take Hampton's deposition at least two or three times, it waited approximately four months before it even answered Hampton's complaint and then another three months before it attempted to take her deposition. And the discovery that it sought in the first three months following the date of the filing of its answer, which included the statute-of-limitations affirmative defense, was not even designed to solicit information in support of that affirmative defense.

¶38. And so I reiterate—even if UMC's motion for summary judgment had been heard on June 20, 2013, and taken under advisement by the circuit judge—it seems to me that UMC's failure to take any action prior to the November 4, 2013 trial date to prod the circuit court into ruling on the motion for summary judgment prior to participating in several expensive depositions in October—just days before the trial—must be taken as either an abandonment of the motion or a waiver of its statute-of-limitations affirmative defense.

¶39. For the reasons stated, I dissent. I find no reversible error and would affirm the judgment of the circuit court.

18