# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00024-COA

**PROTECT YOUR HOME D/B/A DEFENDERS, INC., ADT, LLC, JAMES JOHNSON D/B/A DEFENDERS AND TOBY NEAL MOORE**  APPELLANTS

**v.**

**LASHIA THOMAS**  APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 07/17/2019 |
| TRIAL JUDGE: | HON. ELEANOR JOHNSON PETERSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANTS: | D. STERLING KIDD |
| | ROBERT P. THOMPSON |
| | LOCKE HOUSTON WALDROP |
| | LAURA WALSH GIVENS |
| ATTORNEYS FOR APPELLEE: | JAMES ASHLEY OGDEN |
| | JAMES W. SMITH JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED AND REMANDED - 11/09/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., GREENLEE AND LAWRENCE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Lashia Thomas responded to an advertisement by ADT for a home alarm system. When Appellant Toby Moore came to Thomas' home, he proceeded to search the home and allegedly took some prescription drugs. Thomas instituted a civil action, and the circuit court declined to enforce an arbitration agreement contained in the alarm-service contract.

¶2.     Protect Your Home d/b/a/ Defenders Inc.; ADT, LLC; James Johnson d/b/a/ Defenders; Toby Neal Moore, individually, and John Does 1-5 (collectively "Appellants")

appeal from the judgment of the Hinds County Circuit Court, holding that the matter was not within the scope of the arbitration agreement and denying their motion to compel arbitration. Finding that the circuit court did not err by denying the motion to compel arbitration, we affirm and remand the case for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶3.     After receiving an ADT advertisement flyer in the mail, Lashia Thomas requested that an alarm system be installed in her home. On October 17, 2018, Protect Your Home d/b/a Defenders Inc., an affiliate of ADT, sent its employee Toby Moore to Thomas' home to install the security system. Upon arrival, Moore gave Thomas an electronic work order to sign before beginning the installation process. After entering Thomas' home, Moore proceeded through private areas of Thomas' home. According to Thomas, she caught Moore taking her prescription medications from her bedside table. When Thomas confronted Moore, he threatened her before fleeing the premises. Thomas called the police and Moore's supervisor, James Johnson, to report the theft and threat.

¶4.     Johnson arrived at Thomas' home the same day. According to Thomas, Johnson apologized and agreed to void the work order that she had signed. According to Johnson, he inquired whether Thomas wanted to proceed with the alarm installation, and after speaking with her husband, Thomas agreed. Johnson completed the system installation, and then he presented Thomas with the alarm-service contract. The next day, Thomas called ADT several times in an attempt to cancel the contract and service. According to Thomas, the company refused to release her and informed her that she was bound to the contract.

2

¶5.     In February 2019, Thomas filed her complaint against the Appellants for intentional and negligent acts and requested to be released from paying for the alarm-system services. On April 4, 2019, the Appellants filed a motion to compel arbitration seeking to enforce the arbitration clause in the alarm-service contract signed by Thomas and Johnson. The Appellants asserted that this arbitration agreement bound Thomas, was to be interpreted broadly and applied to "any and all disputes between [ADT, the Dealer, the Customer, and any Independent Contractor]." Moore joined in the motion to compel arbitration on the same day.

¶6.     Thomas responded in opposition and later filed an amended response. Thomas contended that the Appellants waived their right to arbitration by filing a motion to compel instead of an answer asserting the defense of arbitration. Thomas further argued that their arbitration agreement was invalid and that there was no contract.

¶7.     On June 24, 2019, the circuit court held a hearing on the motion to compel arbitration and ultimately entered an order denying the motion on July 17, 2019. The circuit court found that no contract had been established at the time of the incident and that the language in the service contract's arbitration clause did not enable the court to enforce the arbitration clause retroactively. The court also found that any claims against the Appellants for acts occurring after Thomas signed the service contract would be subject to arbitration.

¶8.     On July 26, 2019, the Appellants filed a motion to reconsider the circuit court's order, claiming that the arbitration agreement applied retroactively. On August 2, 2019, Thomas filed her response to the motion to reconsider. The court held a hearing on the matter on

September 25, 2019. On November 26, 2019, the court entered an order denying the motion, finding that Thomas' dispute fell outside the scope of the arbitration agreement and was not the type of issue intended to be covered as part of the agreement between the parties.

¶9.    On December 20, 2019, the Appellants filed a joint notice of appeal seeking relief from the circuit court's July 17, 2019 order and opinion and its November 26, 2019 order. However, on December 27, 2019, the Appellants filed supplemental authority with the circuit court to support their motion to compel arbitration. They asserted that the circuit court lacked subject matter jurisdiction to decide the scope of the arbitration agreement. In response, Thomas filed a motion to strike asserting that the supplemental authority was untimely, improper, and barred by res judicata. On January 14, 2020, the Appellants filed a response to Thomas' motion to strike and a motion to supplement the record. On January 28, 2020, the circuit court held a hearing on both motions. Finding that the Appellants' request to supplement the record was an attempt to present new legal and factual arguments not presented to the circuit court, the circuit court denied the motion.

¶10.    On February 4, 2020, the Appellants filed a motion pursuant to Mississippi Rule of Civil Procedure 60 asserting that the court lacked subject matter jurisdiction based on the plain language of the arbitration agreement and the incorporation of the rules from the American Arbitration Association (AAA) or the Judicial Arbitration and Mediation Services (JAMS). The circuit court denied the Rule 60 motion, finding that the Appellants' subject-matter-jurisdiction argument was unsupported by case law and repetitive.

¶11.    On appeal, the Appellants claim that the circuit court erred by not compelling Thomas

4

to arbitrate her claims. Specifically, the Appellants claim that the circuit lacked subject matter jurisdiction to decide the scope of the arbitration agreement, the court erred by finding that the agreement did not apply retroactively, and the court erred by finding that the dispute was outside the scope of the agreement because the agreement includes intentional acts.

## STANDARD OF REVIEW

¶12. "In reviewing an appeal of an order compelling arbitration, we review the [circuit court's] factual findings under an abuse-of-discretion standard, and we conduct a de novo review of all legal conclusions." *Virgil v. Sw. Miss. Elec. Power Ass'n*, 296 So. 3d 53, 59 (¶11) (Miss. 2020).

## DISCUSSION

¶13. When determining whether a party may compel arbitration, a court must determine (1) "whether the parties agreed to arbitrate the dispute" and (2) "whether legal constraints external to the parties' agreement bar arbitration of the claims." *Greater Canton Ford Mercury Inc. v. Ables*, 948 So. 2d 417, 421 (¶8) (Miss. 2007). Mississippi acknowledges the strong federal policy favoring arbitration. *Adams v. Greenpoint Credit LLC*, 943 So. 2d 703, 708 (¶14) (Miss. 2006). Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Nethery v. Capital S. Partners Fund II L.P.*, 257 So. 3d 270, 274 (¶18) (Miss. 2018) (citing *McLaughlin v. McCann*, 942 A.2d 616, 621 (Del. Ch. 2008)).

**I.      Whether the court lacked subject matter jurisdiction to determine the scope of the arbitration agreement.**

¶14. The Appellants argue that the arbitration agreement references and incorporates the

rules of the AAA and JAMS, which provide that an arbitrator is to decide the scope of arbitration clauses. The Appellants cite several cases that hold a court lacks jurisdiction to determine arbitrability when the parties incorporate arbitration rules into their agreement, which thereby provides an arbitrator with the authority to determine the arbitrability of a dispute. The Appellants frame the issue as one of subject matter jurisdiction, which may be brought up at any time. *See Est. of Perry v. Perry*, 61 So. 3d 193, 198 (¶23) (Miss. Ct. App. 2010) (holding that "questions of subject-matter jurisdiction may be raised for the first time on appeal"); *Ridgeway v. Hooker*, 240 So. 3d 1202, 1208 (¶23) (Miss. 2018) (stating that "the defense of lack of subject matter jurisdiction cannot be waived"). However, this is not a matter of subject matter jurisdiction. Rather, this is a matter of waiver.

¶15.    Our supreme court has held that "[a] defendant's failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver." *Woodard v. Miller*, No. 2020-IA-00031-SCT, 2021 WL 3560224, at *7 (¶41) (Miss. 2021) (citing *MS Credit Ctr. Inc. v. Horton*, 926 So. 2d 167, 180 (¶44) (Miss. 2006)). The waiver principle established in *Horton* "is not limited to assertion of the right to compel arbitration." *Id*. The Mississippi Supreme Court has applied the waiver principle to various types of affirmative defenses. *Id.*; *see,* e.g.*, Hinton v. Sportsman's Guide Inc.*, 285 So. 3d 142, 150 (¶15) (Miss. 2019) (applying waiver analysis to the affirmative defense of innocent-seller immunity); *Meadows v. Blake*, 36 So. 3d 1225, 1232-22 (¶15) (Miss. 2010) (Applying *Horton*, a medical-malpractice defendant waived the

6

defense of the plaintiff's failure to comply with statutory pleadings requirements.); *Spann v. Diaz*, 987 So. 2d 443, 448 (¶15) (Miss. 2008) (applying *Horton* waiver analysis to the affirmative defense of the running of the statute of limitations); *E. Miss. State Hosp. v. Adams*, 947 So. 2d 887, 891 (¶10) (Miss. 2007) (Based on *Horton*, the defendants waived the defenses of insufficiency of process and insufficiency of service of process.).

¶16.    In the present case, the Appellants failed to assert or pursue the clause within the arbitration agreement incorporating the rules of arbitration organizations until after the circuit court ruled against them and after they filed their notice of appeal. The Appellants waived this defense because they actively participated in the litigation of this case without pursuing or asserting their defense of the incorporation of the arbitration rules until after they had already lost. *See Est. of Grimes v. Warrington*, 982 So. 2d 365, 370 (¶27) (Miss. 2008) (failing to actively and specifically pursue an affirmative defense while participating in litigation served as a waiver of defense).

¶17.    Furthermore, ADT claims that an arbitrator, not the court, should have decided the scope of the arbitration agreement because the parties expressly agreed that an arbitrator would decide this issue.

¶18.    While a strong federal policy in favor of arbitration agreements exists, "[t]he presumption in favor of arbitration does not apply to the question of who should decide arbitrability[.]" *Id.* at 422 (¶12). Generally, the question of whether a particular dispute is subject to arbitration is "considered an issue for the courts, not the arbitrator, 'unless the parties clearly and unmistakably provide otherwise.'" *Id*. (quoting *AT&T Techs. Inc. v.*

*Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). "In other words, when the parties have explicitly agreed that the question of arbitrability is to be decided by an arbitrator rather than the court, that agreement must be interpreted by an arbitrator." *Id*. "The parties' agreement to arbitrate issues of arbitrability, including the scope of their agreement and its applicability to particular claims, is controlling." *Bank of Holly Springs v. Puryear ex rel. Est. of Brown*, 309 So. 3d 598, 603 (¶15) (Miss. Ct. App. 2020) (citing *Ables*, 948 So. 2d at 422-23(¶¶13-16)). "[P]arties may agree on the scope of arbitration in any way they desire," and we "must give . . . effect" to their agreement "as written." *Id.*

¶19.    Here, the arbitration agreement between the Appellants and Thomas does not "clearly and unmistakably" provide that an arbitrator, not a court, shall determine that a dispute is subject to arbitration. The arbitration agreement states, in relevant part:

> The JAMS or AAA code of procedures, as chosen, will govern the arbitration, but if there is a conflict between the applicable code of procedures and this Arbitration Agreement, this Arbitration Agreement shall control to the fullest extent permitted by the FAA.

The arbitration agreement later states:

> Any dispute regarding the applicability, enforcement or interpretation of Paragraph 5 above or this paragraph 7, shall be resolved by a court having proper jurisdiction.

Thus, unlike the numerous cases cited by the Appellants, the parties did not clearly and unmistakably agree that an arbitrator, not a court, would decide any dispute concerning the scope of the arbitration agreement and the arbitrability of any claim. Accordingly, the circuit court did not err by ruling that a court, not an arbitrator, should decide the arbitrability of Thomas' claims.

8

## II. Whether the circuit court erred by denying the Appellants' motion to compel arbitration.

¶20. The Appellants claim that the circuit court erred by denying the motion to compel arbitration. As stated above, we review de novo the grant or denial of a petition to compel arbitration. *East Ford Inc. v. Taylor*, 826 So. 2d 709, 713 (¶9) (Miss. 2002).

¶21. "Our law requires this [c]ourt to accept the plain meaning of a contract as the intent of the parties if no ambiguity exists." *B.C. Rogers Poultry Inc. v. Wedgeworth*, 911 So. 2d 483, 487 (¶8) (Miss. 2005) (citing *IP Timberlands Operating Co.*, 726 So. 2d 96, 108 (¶50) (Miss. 1998)). Furthermore, "[c]ontracts are solemn obligations[,] and the [c]ourt must give them effect as written." *Id*. "[W]e do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Id*. (quoting *EEOC v. Waffle House Inc.*, 534 U.S. 279, 294 (2002)). Contrary to the Appellants' argument, the arbitration agreement's language does not include a word or phrase that conveys an intent by the parties that the arbitration clause should be applied retroactively to Moore's conduct occurring before its execution.

¶22. The ADT's alarm service arbitration clause provides:

> ARBITRATION. DEALER AND I AGREE THAT ANY AND ALL DISPUTES BETWEEN US SHALL BE GOVERNED BY THIS BINDING ARBITRATION AGREEMENT.
>
> As used herein, the term "Dispute" means any claim or controversy, including, but not limited to, Initial claims, counterclaims, cross-claims and third-party claims, whether based in contract; tort; fraud; intentional acts; violation of any statute, code or regulation; or other legal theory. The term "Dispute" shall be given the broadest possible meaning and will apply to, without limitation, all claims and controversies arising from this Arbitration Agreement . . . .

9

¶23. However, the ADT alarm-service arbitration clause provides no language revealing an intent by the parties to indicate retroactive application of the arbitration clause for disputes that could arise prior to the date of the agreement. The arbitration clause contains language indicating that Thomas intended only to submit to arbitration disputes occurring after the service contract was in place.

¶24. According to Thomas, when Moore arrived at Thomas' home, he gave her a work order to sign. He then proceeded to conduct the installation. While installing the system, Moore searched private areas of Thomas' home and was caught allegedly stealing Thomas' prescription medication. Thomas claimed that when she stated she would call the police, Moore threatened her before leaving. Thomas subsequently called the police and Moore's manager, Johnson. Once Johnson arrived at Thomas' home, Johnson apologized for the incident and agreed to cancel the work order. According to Johnson, he inquired as to whether Thomas wanted to proceed with the alarm installation, and after speaking with her husband, Thomas agreed. He completed the system installation and then presented Thomas with the alarm-service contract. After Thomas filed her complaint, the Appellants sought to retroactively enforce the arbitration clause in the alarm-service contract signed by Thomas and Johnson after the incident occurred.

¶25. The circuit court employed the Mississippi Supreme Court's analysis in *AmSouth Bank v. Quimby*, 963 So. 2d 1145 (Miss. 2007). In *Quimby*, as in this case, the court reviewed a denial of a motion to compel arbitration where a broader arbitration clause was in question. *Id*. at 1156 (¶38). The *Quimby* court held that using the word "any" in the

customer agreements was insufficient to indicate retroactive application. *Id*. at 1155 (¶33).

¶26.    The Appellants in this case relied on the use of the word "any" to show its retroactive application. However, like *Quimby*, the circuit court found that ADT's arbitration clause did not contain any time-specific language to suggest this clause's retroactive application. The court explained that the service contract provided a standard user-service agreement for service and monitoring—the kind typically provided to cover claims after installation and future use.  Further, the court clarified that the language of the arbitration agreement would not notify customers that they would have to arbitrate claims occurring before signing the service contract.

¶27.    We agree. In *Wedgeworth*, our supreme court acknowledged that numerous courts have recognized that

> if [an] arbitration clause contains retroactive time-specific language, e.g., a phrase reading "this agreement applies to all transactions occurring before or after this agreement," then [the court] may apply the arbitration provision to events relating to past events. Or, if the arbitration clause contains language stating that it applies to "all transaction between us" or "all business with us," then [the court] may apply the arbitration clause retroactively.

*Wedgeworth*, 911 So. 2d at 489 (¶18) (quoting *Beneficial Nat'l Bank, U.S.A. v. Payton*, 214 F. Supp. 2d 679, 688-89 (S.D. Miss. 2001)). The supreme court requires specific retroactive language in the arbitration clause before finding a preexisting controversy within the agreement's scope.  *Quimby*, 963 So. 2d at 1150 (¶14) (referencing *Wedgeworth*).

¶28.    Here, there was no explicit retroactive language in the arbitration clause that shows intent to use the clause retroactively. "Despite the federal policy favoring arbitration, our courts are required to submit to arbitration only what the parties agreed to submit to

11

arbitration." *Quimby*, 963 So. 2d at 1152 (¶23) (citing *Greenpoint Credit LLC*, 943 So. 2d at 708). Further, while the Federal Arbitration Act is pro-arbitration, it "does not contemplate the arbitration of criminal activity." *Keyes v. Dollar Gen. Corp.*, 240 So. 3d 373, 379 n.1 (Miss. 2018) (quoting *Prescott-Follett & Assocs. Inc. v. Delasa/Prescott Follett & Assocs.*, No. Civ.A. 01-3178, 2002 WL 31528463, at *5 (E.D. La. Nov. 8, 2002)). We are required to endorse arbitration agreements "only to the extent the parties agreed to submit their claims to arbitration." *Id*. at 1153 (¶24).

¶29.    As noted above, when read, the arbitration clause did not notify ADT users that the arbitration clause would apply to disputes occurring prior to the execution of the agreement. Furthermore, the supreme court in "using the permissive 'may' to indicate that [a court] was not bound to find retroactive application even if an arbitration agreement's language was broader than that in *Wedgeworth*," the circuit court could find that the arbitration clause was insufficient to apply retroactively. *Id*. at 1152 (¶21). Thus, we find that the circuit court's denial of the Appellants' motion to compel arbitration based upon the time of execution was proper. Since we agree with the circuit court's findings, the court did not have to determine whether Moore's alleged intentional acts fell within the scope of the parties' agreement, and neither will we.

## CONCLUSION

¶30.    For the foregoing reasons, we affirm the circuit court's denial of the Appellants' motion to compel arbitration and remand the case for proceedings consistent with this opinion.

¶31. **AFFIRMED AND REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**